[Civ. No. 3117. Fourth Dist. Mar. 27, 1944.]

JAMES G. VAGIM, Respondent, v. PORTER L. BROWN, Appellant.

Irvine P. Aten and Richard V. Aten for Appellant.

Iener W. Nielsen and Eckhart A. Thompson for Respondent.

GRIFFIN, J.—Plaintiff prosecuted this action against defendant to recover damages because of defendant's failure

to deliver raisins to plaintiff under a written contract. Plaintiff recovered judgment and defendant appealed.

The appeal is based upon two grounds: (1) that plaintiff was doing business under a fictitious name without compliance with the terms of the statute; and (2) that the contract itself was unlawful and void and known by plaintiff to be unlawful at the time the contract was signed by the plaintiff, and for that reason cannot be enforced.

Plaintiff alleged in the complaint that he "was doing business under the name and style of Vagim Packing Company, and was and is now the sole owner of the business, and has heretofore filed with the county clerk . . . his business certificate showing his ownership of said business after due publication thereof as provided by the laws of the State of California."

Defendant in his answer denied that plaintiff had filed the alleged certificate with the county clerk and had complied with the laws in that respect, and asked that the action be abated for that reason.

The trial court found that the allegations in plaintiff's complaint, in this respect, were true except "no business certificate was filed with the county clerk . . . said filing not being required."

In *Kohler* v. *Stephenson*, 39 Cal.App. 374 [178 P. 970], the "Kohler Steam Laundry" was owned and managed by a person named Lottie A. Kohler. It was there held that she was the sole owner thereof, that the name was not fictitious, and no certificate was required to be filed.

In *Collection Service Corporation* v. *Conlin*, 98 Cal.App. 686 [277 P. 749], the allegation was and the trial court found that Fred L. Alles, an assignor, was "doing business under the registered fictitious name of Alles Printing Company." It was there stated that the designation used was in the eyes of the law fictitious, required the certificate to be published, and that the action could not be maintained for failure to comply with sections 2466-2468, Civil Code. No petition for hearing by the Supreme Court was asked in either case.

In *Wetenhall* v. *Chas. S. Mabrey Const. Co.*, 209 Cal. 293 [286 P. 1015], the Supreme Court held that the name "W. S. Wetenhall Company" was not a fictitious name and no compliance with sections 2466-2468 was required. In it the Conlin case was discussed and for reasons therein stated

it was held that the facts of the Conlin case and the Wetenhall case were "essentially different," and were therefore distinguishable. No mention is made of the Kohler case. We are unable to harmonize the decision in the Conlin case with the decision in the Kohler case. We are impelled to adopt the reasoning expressed by the Supreme Court in the Wetenhall case, which appears to us to be applicable in the instant case. After holding that the name W. S. Wetenhall Company" was not fictitious, it was there said, at page 295:

"If the name 'W. S. Wetenhall Company' is not fictitious then (plaintiff) does not come within the purview of section 2466 at all for the reason that he is an *individual* doing business under the name and style of 'W. S. Wetenhall Company' and is not a *partnership*. That portion of section 2466 of the Civil Code reading 'or a designation not showing the names of *persons* interested *as partners* in such business,' etc., refers *only to partnerships* and *not to an individual*. Or, in other words, if the name used by W. S. Wetenhall is not fictitious and *no other person* is interested with him in the business, he does not have to comply with said section 2466. This section is not susceptible of any other reasonable interpretation."

The plaintiff in this action, James G. Vagim, was an individual, the sole owner of, and doing business under the name and style of Vagim Packing Company. The name was not fictitious. Plaintiff therefore was not required to file a certificate under sections 2466-2468, Civil Code.

Plaintiff's complaint alleges, generally, that on February 21, 1941, plaintiff and defendant entered into a certain written agreement whereby defendant agreed to sell and plaintiff agreed to buy 190,000 pounds of choice or custom grade raisins, buyer's option, packed in 25 pound fiber boxes at an agreed price of 3 cents per pound to be delivered in February, March, and April, 1941; that plaintiff demanded delivery but defendant refused to deliver said raisins except 38,700 pounds; that plaintiff was therefore required to purchase 134,300 pounds in the open market, and pay therefor 4⅜ cents per pound, to fulfill commitments to the trade made by plaintiff; that by reason of the failure of defendants to comply with the terms of the contract damages were sought in the sum of $1,863.17, representing the difference in price. A copy of the contract was attached to the complaint, signed

Vagim Packing Company, by Edw. J. Vagim (plaintiff's agent), and Porter L. Brown.

Defendant's answer admits the due execution of the contract but in connection therewith alleges that ''said agreement was unlawful and void . . . for the reason that said contract called for the delivery of 1940 crop raisins, which raisins, under the California Proration Act and the basic and seasonal programs relative thereto for the year 1940, require that said raisins so contracted for be purchased and marketed in accordance with the rules and regulations of said seasonal program as directed by the Secretary of Agriculture of the State of California; that plaintiff knew, at the time of the making of the agreement, . . . that these defendants were not conforming to said program and that the raisins with which the defendant would fulfill said alleged contract would be raisins purchased out of said program and prorate act and in violation of the provisions thereof.'' It is also claimed therein that 95,700 pounds of raisins at 3 cents per pound had been delivered to plaintiff, and that the balance of raisins to be delivered to the plaintiff were of a certain crop and that said raisins were attached by the government agency, Raisin Proration Zone No. 1, and W. B. Parker, Director of Agriculture of the State of California, in the enforcement of said Prorate Act and seasonal program and have been held under attachment since January 2, 1941, and defendant has been unable to deliver said raisins or any raisins by reason of said governmental interference in said attachment. The other allegations of the complaint are denied generally.

The trial court found in substance that the allegations of plaintiff's complaint were true except that defendant delivered 55,700 pounds of raisins to plaintiff instead of the amount alleged; that plaintiff was required to purchase 134,300 pounds in the open market at a cost of 3 cents a pound and had to expend $15 per ton in processing them to fulfill commitments to plaintiff's trade, and that $1,007.25 damages were due plaintiff for failure of defendant to comply with the terms of the contract. The trial court then specifically found all of the allegations of defendant's answer to be untrue and gave judgment accordingly.

Defendant contends that the uncontradicted evidence shows that the contract was unlawful and void. The evidence on

this subject, produced by plaintiff, shows that prior to June 17, 1941, and during that year "free tonnage was the only thing packers purchased . . . prorate took possession of the balance" and that "we bought and paid for 100 per cent of the raisins and assumed title to the raisins, which were stored with the prorate"; that in June, 1941, the pool was closed and plaintiff entered into a deal to secure additional raisins. Defendant testified that he had had trouble buying raisins; that Vagim had formerly purchased from a Mr. Kovacevich his crop of raisins and had taken delivery on part of it and "the prorate stopped the delivery on a hundred per cent basis"; that on February 10, 1941, Vagim's attorney called the defendant to come to his office in reference to it; that an agreement was worked out with Vagim whereby Brown was to purchase those raisins including the part that was in Vagim's packing house, and subsequently deliver them to Vagim, either as "packed or as stemmed picks"; that defendant paid Kovacevich for them; that they were not handled through the prorate; that he never operated under the 1940 prorate program; that he was in litigation against its enforcement during the entire period; that Vagim knew he was operating outside of the program; that he packed a certain amount of raisins in packages under Vagim's brand; that when delivery of one carload was ready plaintiff's son opened several cases of them and rejected the car lot; that all of "our raisins had been attached and we advised them [Vagims] that they were attached, and that we couldn't pack them on account of the fact that they were attached . . . about the middle of May, 1941"; that "he was in jeopardy"; that in order to get his money for the carload of raisins plaintiff insisted defendant make a "secondary deal" which resulted in defendant making an agreement in respect to the sale of the carload lot whereby Vagim was to sell it for the benefit of defendant to an agent in Chicago; that on February 21, 1941, the written agreement in evidence was executed which superseded and canceled a former contract dated May 14, 1940; that plaintiff paid defendant for the carload lot and also had made payments on deliveries made under the other agreement. On rebuttal Ed Vagim testified that the carload lot was rejected because it was below standard; that Brown admitted that fact; that plaintiff did not know that the carload lot was a part of the Kovacevich

raisins; that the sale of that lot was only an accommodation to Brown and not a part of any delivery under the written agreement; that he saw Brown only once and that was regarding his failure to make delivery on the "unshipped balance against his contract." Plaintiff James G. Vagim did not testify at the trial.

It is apparent from the contract in evidence that the agreement on the part of the defendant to sell to the plaintiff did not mention any particular raisins that defendant was to sell to plaintiff and did not refer to the Kovacevich raisins or that transaction in any manner. It was merely an agreement to sell 190,000 pounds of "choice or custom grade Thompson seedless raisins (buyer's option) at 3¢ per pound." The defendant may have had raisins on hand that were lawfully and legally acquired.

There is nothing on the face of the contract to support defendant's contention that the contract itself was illegal or void. His affirmative defense that there was some illegal transaction in connection with the contract that caused it to become void was found to be untrue by the trial court. In view of the evidence, the trial court had the right to disregard or disbelieve the defendant's testimony in this respect. (*Whitechat* v. *Guyette,* 19 Cal.2d 428, 434-435 [122 P.2d 47]; *Lindemann* v. *San Joaquin Cotton Oil Co.,* 5 Cal.2d 480, 503 [55 P.2d 870].) ▆ If an agreement does not provide for a method whereby its purpose is to be accomplished, it must be assumed, if it can be accomplished by any legal method, that such method was contemplated when the contract was made, and will be pursued. (*Burne* v. *Lee,* 156 Cal. 221 [104 P. 438].)

▆ It is the universal rule that where a contract can be performed legally it will not be presumed that the parties intended to perform it in an illegal manner (*Fites* v. *Marsh,* 171 Cal. 487 [153 P. 926]), and where a contract can be performed in a legal manner, as well as in an illegal manner, it will not be declared void because it was in fact performed in an illegal manner. (*Teachout* v. *Bogy,* 175 Cal. 481 [166 P. 319].) This last principle stated is applied where the contract manifests no intent or purpose that it is to be performed in an illegal manner and where also the party complaining does not participate in, or cooperate with the illegal performance. ▆ If the method provided for carrying into

effect the principal purpose of an agreement has been executed and accepted by both parties, and the whole contract in itself is valid, it will not be permitted to fall because of any supposed invalidity attached to the means adopted. (*Estate of Yoell,* 164 Cal. 540 [129 P. 999].)　　■　Since nothing appears on the face of the instrument itself indicating its invalidity the burden was upon the defendant to establish his defense. (*George J. Birkel Co.* v. *Howze,* 12 Cal. App. 645 [108 P. 145].) Having failed in this respect, the trial court's determination may not be disturbed on appeal.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.