[Civ. No. 14697. First Dist., Div. One. Aug. 14, 1951.]

THE WALTER M. BALLARD CORPORATION (a Corporation), Respondent, v. JACK DOUGHERTY, Appellant.

Edmund M. Sullivan for Appellant.

Noland & Lawson for Respondent.

PETERS, P. J.—Plaintiff corporation brought this action for the balance claimed to be due for designing and architectural services rendered to defendant. The complaint alleges that plaintiff, a foreign corporation, is duly qualified to do business in California, and that all the architectural services were rendered by an agent of the corporation, Jones by name, who was a duly licensed architect. The defendant's answer admits that the architectural services were rendered by Jones, and that Jones is a duly licensed architect, but avers that plaintiff is a corporation and is not licensed to practice architecture in this state, and did not, at any time, notify defendant, in writing, that it was not so licensed. The answer denies any indebtedness to plaintiff. Defendant also filed a counterclaim to recover $5,000 already paid to plaintiff by defendant for claimed architectural services. On motion the counterclaim was stricken. On the issues thus framed, the cause proceeded to trial before the court without a jury. Judgment was entered in favor of the plaintiff in the sum of $2,790.65, the precise sum prayed for in the complaint. This judgment is predicated upon a general finding that all of the allegations of the complaint are true and that those of the answer are untrue.

The major contentions of appellant are that a corporation cannot practice architecture, and that, in any event, since the corporation was not licensed as an architect in this state, it may not recover for architectural services. There is no merit to these or the other contentions made.

Appellant is the owner of the Casa Madras Hotel in Monterey. Respondent corporation is not licensed to practice architecture in this state. It renders services as a hotel consultant, designer and decorator. It has been in this business for 27 years. Architectural service is only one of the services

rendered to its clients. Whenever architectural services are required, the corporation hires a duly licensed architect to perform them.

On April 18, 1945, appellant and respondent entered into a written contract. By the terms of that contract respondent contracted to submit a comprehensive report on work needed on the hotel; to submit plans, specifications and general recommendations for scheduling the work; to conduct competition among qualified bidders; to obtain the best possible prices on contracting, and to assist in purchasing furnishings, materials and supplies; and to supervise the completion of the work. The fee was to be 10 per cent of a predetermined budget with a retainer of $750 due on acceptance of plans and designs, the retainer to be applied against the 10 per cent fee.

One Moyer, an employee of respondent, while stationed in New York, had performed some work for appellant under the contract in arranging for the purchase of various kinds of supplies. In October of 1945, Moyer came to San Francisco as the local manager of respondent. By the end of December, 1945, appellant had approved the final preliminary plans submitted by respondent in reference to building alterations, and had authorized respondent to proceed with working drawings and decoration schemes. About this time government restrictions on building materials were lightened, and appellant decided upon more extensive alterations than had been originally planned. Sometime before January 6, 1946, Moyer and appellant had a conversation in which the new ideas were discussed. Moyer told appellant, and appellant agreed, that, in view of the change in plans, a new method of payment would have to be agreed upon. Appellant requested that the new payment plan be reduced to writing. The terms of this new contract are set forth in a letter from Moyer to appellant dated January 7, 1946. It states, among other things, that the proposed work is to be conducted in three phases, with a progressive fee payment plan for each phase. The three phases were to be:

1. Survey of existing conditions, with recommendations and preliminary sketches and layouts;

2. Working plans and specifications, and all details preparatory to the execution of the work; and

3. Supervision of the execution of the work on the job with the contractors, and at mills and factories in connection with furnishings and equipment for the interiors of the buildings.

It was estimated that the total cost of the project would be about $100,000, and the total fee was to be 10 per cent of

the total cost, which, based upon the estimate, would be $10,000. Twenty-five per cent of this fee, or $2,500, was to be paid to cover phase 1, 50 per cent of the total fee, or $5,000, for phase 2, and 25 per cent of the fee, or $2,500, upon completion, for phase 3. If phase 3 was not completed as contemplated, defendant was to pay for phases 1 and 2.

Appellant, by a letter dated January 9, 1946, approved this proposition and enclosed a check for $2,500 to apply to phase 1. On May 17, 1946, Moyer wrote to appellant and informed him that preliminary plans and sketches had been submitted to a contractor, and that it was estimated that the total cost would be $300,000. By June of 1946 appellant, however, had determined to expend only $200,000 on improvements. Accordingly, he sent to Moyer another check for $2,500, which, based upon the $200,000 estimate, was the full balance due for phase 1.

In the meantime, appellant had requested that a local architect be employed to work on the plans and specifications. Pursuant to this request, and with the knowledge of appellant, in April of 1946 respondent employed Jones, a licensed architect, under a written contract, to make working plans and specifications for the job under phase 2. Prior to the hiring of Jones, the preliminary plans had been completed by respondent. These preliminary sketches were prepared pursuant to the ideas and corrections submitted by appellant. After Jones was hired, he prepared final and detailed working plans. All of the plans submitted by him bear his name as architect and make no reference to respondent. After these plans were prepared, appellant again changed his mind. He now decided that he wanted outside corridors instead of inside corridors, and also wanted other changes. He talked these new ideas over with Jones, and requested him to redraw the plans, and agreed to pay him for his work in making the changes. He ultimately paid Jones $522 for this extra work. Jones redrafted the plans, and a bid was secured from a contractor. His bid was $55,813 for the construction work. Jones submitted a bill to respondent, pursuant to his contract with the corporation, based upon the amount of the bid.

In the meantime, and before the plans were redrafted by Jones, appellant told Moyer that the plans prepared by Jones were unsatisfactory; that he did not intend to go ahead with the alterations at that time; that he would deal with Jones, directly; and that he desired to break off the arrangements with respondent. Moyer replied that as soon as cost estimates

were secured so that the amount owed by appellant under phase 2 for the work performed by Jones could be ascertained, appellant would be billed for this service, and the account closed. As soon as the bid of $55,813 was secured from the contractor, respondent billed appellant for $2,790.65. This is the full amount due for phase 2, that is, it is 50 per cent of 10 per cent of the contractor's bid, as provided in the contract. In March of 1947 appellant disclaimed any liability to respondent. This suit resulted.

It is the main theory of appellant that the contract between him and respondent required respondent, a corporation, and unlicensed as an architect, to perform architectural services, and that any such contract, under the law, is void and unenforceable. Appellant relies upon sections 5536 and 5537 of the Business and Professions Code. Section 5536 makes it a misdemeanor for any unlicensed person to practice architecture in this state. Section 5537 provides: "This chapter does not prevent any person from making any plans or drawings for his own buildings or from furnishing to other persons, plans, drawings, specifications, instruments of service, or other data for buildings, if, prior to accepting employment or commencing work on such plans, drawings, specifications, instruments of service, or other data, the person, so furnishing such plans, drawings, specifications, instruments of service, or data, fully informs such other person or persons, in writing, that he, the person proposing to furnish such plans, drawings, specifications, instruments of service, or data, is not an architect."

Appellant also argues that respondent was, in effect, practicing architecture, that architecture is a "learned profession," and that a corporation may not be licensed to practice that profession, citing cases dealing with the legal and medical professions. None of these contentions is sound.

These very contentions were decided adversely to appellant in *Binford* v. *Boyd*, 178 Cal. 458 [174 P. 56]. There, an assignee of a corporation brought an action to recover for the balance claimed to be due for the preparation of plans and specifications for the construction of a building. The corporation, as in the instant case, was unlicensed, and did not inform the defendant, in writing, of such fact. As in the instant case, the plans and specifications were drawn by a licensed architect hired for that purpose by the corporation. A judgment for plaintiff was affirmed. The Supreme Court stated (p. 462): "The act is effective upon corporations only

to this extent, that if it undertakes to do business of that character, either the persons whom it engages therein must be certified architects under this statute, or, when contracting for plans and specifications for the erection of buildings for other persons, such persons must be informed that the plans and specifications will be prepared by someone who is not a certified architect. The act does not prohibit a corporation from contracting to furnish to another person plans and specifications which are to be prepared by a third person who is a certified architect. Nor is there anything in the object of the act, or the evils to be removed thereby, which would raise the necessary implication that it was intended to prevent such practice. The main object of the act, so far as furnishing plans and specifications alone is involved, was to secure the erection of buildings from plans prepared by those who were sufficiently schooled in the profession to secure a license from the state board and who had complied with the state law by securing such license. But it was deemed best to qualify the absolute prohibition of the law by allowing the owners of property and persons who were not certified architects to contract freely with each other for furnishing such plans and specifications, provided the person furnishing the same informed the owner that he was not a certified architect. It is obvious that if such plans and specifications have been prepared by certified architects, there could be no object in which the public are concerned which should prevent the sale thereof by the person who prepared them, or by someone to whom he has sold them. The act as a whole shows that it was not intended to prevent the sale of plans prepared by a qualified person, but to prevent their preparation by an unqualified person, unless the purchaser was informed of that fact. The act does not forbid a corporation to employ certified architects, have them prepare plans and specifications, and then furnish such plans and specifications to other persons. Either a corporation or an individual could do this without transgressing the terms of the act when interpreted in the light of its object and purpose. The corporation was, therefore, acting lawfully in the matter." (See, also, *People* v. *Allied Architects Assn.*, 201 Cal. 428 [257 P. 511], where it was held that a corporation could practice architecture.)

Appellant recognizes, as he must, that the holding in the Binford case is directly contrary to his contentions made on this appeal. He attacks that case as being "utterly unsound" and as not being "consonant with present-day law." (App.

Op.Br. p. 10.) These attacks on that opinion are unwarranted.

 It is not the policy of the law, as contended by appellant, that unlicensed persons should not share in architect's fees. The policy is to prevent unlicensed persons from preparing plans and specifications, unless the client knows and is informed that such person is unlicensed. The fact that an unlicensed corporation or individual may share in the fee is an immaterial fact. That was the holding of the Supreme Court in the recent case of *Joseph* v. *Drew*, 36 Cal.2d 575 [225 P.2d 504]. That case held that under section 5539 of the Business and Professions Code a partnership may exist between architects and contractors; that the partnership may contract and collect for architectural services as long as licensed architects perform the work; and the fact that nonlicensed contractors thus share in architectural fees is immaterial. Certainly, if a partnership, composed partly of unlicensed persons, can recover for architectural services, as long as the services are rendered by a licensed architect, an unlicensed corporation can recover for such services where the architectural work is done by a licensed architect, and the plans and specifications so show.

 Appellant next complains that some of the services rendered by respondent were rendered long before Jones, the architect, was hired. That is so. But the contract called for other services as well as architectural services. The architectural work was only one phase, and for that phase Jones was hired, and performed the services.

 Appellant next contends that the final plans were drawn by Jones, not for the corporation but pursuant to an independent contract with appellant. That is not a correct summary of the evidence. Jones was hired by respondent for the specific purpose of drafting the plans and specifications on appellant's job. He drafted complete plans, and then appellant wanted some further changes and did employ Jones for this purpose, and did pay him $522 for this extra work. But that was not in full payment for the architectural work performed. Jones billed the respondent for the full amount of his services based upon the contractor's bid. The only material change in the plans was to substitute outside for inside corridors. It is, to say the least, a reasonable inference that the major services rendered by Jones were rendered pursuant to his contract with respondent.

 In reference to the counterclaim, appellant argues that the contract for architectural services was illegal, and

since he was not *in pari delicto,* he should have been permitted to offer evidence to support his claim to recover the $5,000 already paid. As already held, the contract was not illegal, so the basic premise of this argument is unsound. Moreover, the $5,000 was paid for phase 1, which involved nonarchitectural services. ▮ The preparation of preliminary sketches is not architectural work. (*Joseph* v. *Drew,* 36 Cal.2d 575 [225 P.2d 504].)

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

The opinion was modified to read as above printed on September 13, 1951.

Appellant's petition for a hearing by the Supreme Court was denied October 11, 1951. Edmonds, J., voted for a hearing.