[Sac. No. 6211.   In Bank.   Oct. 17, 1952.]

EDWARD C. TOLMAN et al., Petitioners, v. ROBERT M.
UNDERHILL, as Secretary and Treasurer of the Re-
gents of the University of California et al., Respondents.

Stanley A. Weigel for Petitioners.

Pillsbury, Madison & Sutro, Eugene M. Prince and Francis R. Kirkham for Respondents.

Harold W. Kennedy, County Counsel, and Gerald G. Kelly, Assistant County Counsel, as Amici Curiae on behalf of Respondents.

GIBSON, C. J.—This is an original proceeding in mandamus to compel the Regents of the University of California, through their secretary, Underhill, to issue to each petitioner a letter of appointment to his regular post on the faculty of the university.

On April 21, 1950, the regents passed a resolution which provided that, effective with the academic year beginning July 1st, "conditions precedent to employment or renewal of employment of American citizens in the University shall be (1) execution of the constitutional oath of office required of public officials of the State of California and (2) acceptance of appointment by a letter which shall include the following provision:

" 'Having taken the constitutional oath of office required of public officials of the State of California, I hereby formally acknowledge my acceptance of the position and salary named, and also state that I am not a member of the Communist Party or any other organization which advocates the overthrow of the Government by force or violence, and that I have no com-

mitments in conflict with my responsibilities with respect to impartial scholarship and free pursuit of truth. I understand that the foregoing statement is a condition of my employment and a consideration of payment of my salary.' "

Petitioners have taken an oath identical to that prescribed in section 3 of article XX of the state Constitution, as required of all state employees by sections 18150 et seq. of the Government Code.* However, when notified of their appointment to their regular position on the faculty for the academic year, petitioners refused to execute letters of acceptance in the form required by the resolution and have brought the present proceeding claiming that the requirement is invalid.

We need not discuss the numerous questions raised by petitioners with regard to alleged violation of their civil rights and impairment of contract because we are satisfied that their application for relief must be granted on the ground that state legislation has fully occupied the field and that university personnel cannot properly be required to execute any other oath or declaration relating to loyalty than that prescribed for all state employees.

The historical background of the established practice of limiting the number and types of oaths and tests which may be required as a qualification for public employment has been discussed in our opinion in *Pockman* v. *Leonard, ante,* p. ———— [249 P.2d 267]. In California our Constitution has always provided that members of the Legislature and all executive and judicial officers, except such inferior officers as may be exempted by law, shall take the oath now set out in section 3 of article XX, and that "no other oath, declaration or test, shall be required as a qualification for any office or public trust." The state Legislature has never exempted any public officer or employee from taking the constitutional oath but, to the contrary, has expressly provided that it shall be required of every state employee and, by a series of statutes, has enacted a general and comprehensive scheme relating to execution and filing of the oath by all such persons.

---

*The oath prescribed by section 3 of article XX is as follows: "I do solemnly swear (or affirm, as the case may be) that I will support the Constitution of the United States and the Constitution of the State of California, and that I will faithfully discharge the duties of the office of ———, according to the best of my ability."

Gov. Code, § 18150 et seq. provides that an identical oath shall be taken by all state employees.

Section 1360 of the Government Code provides that before any officer enters on the duties of his office he shall take and subscribe to an oath which is identical with that set forth in section 3, article XX of the Constitution. (Enacted 1943. Based on former Pol. Code, § 904, [1872].) Section 1364 makes it unlawful to remove a person "from an office or position of public trust" because of his failure to comply with any law, charter or regulation prescribing an additional test or qualification, other than tests and qualifications provided for under civil service and retirement laws, if he has taken or offers to take the oath prescribed by section 1360. And section 1365 states that an officer cannot lawfully be removed from office because of his refusal to require additional tests or qualifications of persons he appoints to positions of public trust. (Enacted 1943. Based on Stats. 1901, ch. 167, p. 552.) In 1941 the Legislature enacted laws requiring all state employees, whether members or nonmembers of civil service, to take an oath identical with the constitutional oath (Stats. 1941, ch. 159, p. 1199 and ch. 236, p. 1302), and this requirement was incorporated into the Government Code as sections 18150 et seq. in 1945. Section 18152 provides, as to nonmembers of civil service, that the manner of taking and filing the oath required by section 18150 shall be the same as is provided for oaths taken pursuant to section 1360, and section 18154 provides that refusal to take the oath shall result in forfeiture of position. As to members of civil service, section 18153 prescribes the manner of taking and filing the oath, section 18155 provides that refusal to take the oath shall be grounds for dismissal, and section 18156 states that every civil service employee who takes the oath within the time prescribed by sections 18150 et seq. "is conclusively presumed to have been and to be legally holding his position as far as laws requiring him to take, subscribe, or file an oath are concerned."*

Respondents contend that state legislation like sections 1360 et seq. and 18150 et seq. of the Government Code is inapplicable to university personnel because of that portion of

---

*The provisions of §§ 18150-18158 were superseded in 1950 by Government Code §§ 3103-3109, commonly known as the Levering Act, which requires all city, county and state employees to take a loyalty oath which is substantially the same as the constitutional oath. (See *Pockman* v. *Leonard, ante,* p. 676 [249 P.2d 267].) The act did not go into effect until several months after the filing of the present proceeding, and the question of its operation is not directly involved in this case. (*Cf. Fraser* v. *Regents of University of California, post,* p. 717 [249 P.2d 283].)

section 9 of article IX of the state Constitution which provides that the University of California shall be administered by the regents, "with full powers of organization and government, subject only to such legislative control as may be necessary to insure compliance with the terms of the endowments of the university and the security of its funds." ■ It is well settled, however, that laws passed by the Legislature under its general police power will prevail over regulations made by the regents with regard to matters which are not exclusively university affairs. (See *Wallace* v. *Regents of University of California,* 75 Cal.App. 274, 278 [242 P. 892]; *Williams* v. *Wheeler,* 23 Cal.App. 619, 624-625 [138 P. 937].) ■ There can be no question that the loyalty of teachers at the university is not merely a matter involving the internal affairs of that institution but is a subject of general statewide concern. ■ Constitutional limitations upon the Legislature's powers are to be strictly construed, and any doubt as to its paramount authority to require University of California employees to take an oath of loyalty to the state and federal Constitutions will be resolved in favor of its action. (*Cf. Collins* v. *Riley,* 24 Cal.2d 912, 915-916 [152 P.2d 169].)

■ Although the adoption of local rules supplementary to state law is proper under some circumstances, it is well settled that local regulation is invalid if it attempts to impose additional requirements in a field which is fully occupied by statute. (*Pipoly* v. *Benson,* 20 Cal.2d 366, 370-371 [125 P.2d 482, 147 A.L.R. 515]; *Eastlick* v. *City of Los Angeles,* 29 Cal. 2d 661, 666 [177 P.2d 558, 170 A.L.R. 225].) ■ Determination of the question whether the Legislature has undertaken to occupy exclusively a given field of legislation depends upon an analysis of the statute and a consideration of the facts and circumstances upon which it was intended to operate. (*Eastlick* v. *City of Los Angeles, supra,* 29 Cal.2d at p. 666; *Pipoly* v. *Benson, supra,* 20 Cal.2d at pp. 372-375; *In re Iverson,* 199 Cal. 582, 586-587 [250 P. 681]; *Ex parte Daniels,* 183 Cal. 636, 642, 643 [192 P. 442, 21 A.L.R. 1172].) ■ Where the Legislature has adopted statutes governing a particular subject matter, its intent with regard to occupying the field to the exclusion of all local regulation is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme. (*Eastlick* v. *City of Los Angeles, supra,* 29 Cal.2d at p. 666; *Pipoly* v. *Benson, supra,* 20 Cal.2d at 371-373; *Ex parte Daniels, supra,* 183 Cal. at p. 642-643.)

■ It is immediately apparent, upon applying these tests to the statutes here involved, that the loyalty of state employees is not a matter as to which there may reasonably be different standards and different tests but is, without doubt, a subject requiring uniform treatment throughout the state. As we have already seen, the Legislature has enacted a general and detailed scheme requiring all state employees to execute a prescribed oath relating to loyalty and faithful performance of duty, and it could not have intended that they must at the same time remain subject to any such additional loyalty oaths or declarations as the particular agency employing them might see fit to impose. Multiplicity and duplication of oaths and declarations would not only reflect seriously upon the dignity of state employment but would make a travesty of the effort to secure loyal and suitable persons for government service.

■ We are satisfied that the Legislature intended to occupy this particular field of legislation by enacting Government Code sections 1360 et seq. and 18150 et seq. and that there is no room left for supplementary local regulation. (*Cf. Pipoly* v. *Benson,* 20 Cal.2d 366, 371, 373 [125 P.2d 482, 147 A.L.R. 515] ; *Eastlick* v. *City of Los Angeles,* 29 Cal. 2d 661, 666-667 [177 P.2d 558, 170 A.L.R. 225].) The declaration as to loyalty required by the regents is, accordingly, invalid.

No question is raised as to petitioners' loyalty or as to their qualifications to teach, and they are entitled to a writ directing respondents to issue to each of petitioners a letter of appointment to his post on the faculty of the university upon his taking the oath now required of all public employees by the Levering Act. (See *Fraser* v. *Regents of University of California, post,* p. 717 [249 P.2d 283].)

Let a writ of mandate issue for the limited purpose above indicated.

Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

For the reasons stated in my dissenting opinion in *Pockman* v. *Leonard,* this day filed, *ante,* p. 688 [249 P.2d 267], I would issue a writ of mandate as prayed for in the petition.