[L. A. No. 22035. In Bank. Oct. 17, 1952.]

JUNE HIRSCHMAN et al., Appellants, v. COUNTY OF LOS ANGELES et al., Respondents.

Margolis & McTernan, John T. McTernan, William B. Murrish, Wirin, Rissman & Okrand, A. L. Wirin, Fred Okrand and Nanette Dembitz for Appellants.

Harold W. Kennedy, County Counsel, Gerald G. Kelly, Assistant County Counsel, and Robert L. Trapp, Deputy County Counsel, for Respondents.

GIBSON, C. J.—Plaintiffs, permanent civil service employees of the county of Los Angeles, were discharged because they refused to execute the oath and affidavits prescribed by orders of the county board of supervisors made in 1947 and 1948.* The county civil service commission sustained the discharges after a hearing upon stipulated facts, and plaintiffs sought a writ of mandate in the superior court to compel their reinstatement and the payment of wages retroactive to the date of discharge. This appeal was taken from the judgment denying the requested relief.

The oath and affidavits are as follows:

"A. OATH OF OFFICE OR EMPLOYMENT

"I, _____ do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution and laws of the State of California, against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties of the office or employment on which I am about to enter or am now engaged. SO HELP ME GOD.

"B. AFFIDAVIT RE SUBVERSIVE ACTIVITY

"I do further swear (or affirm) that I do not advocate, nor am I now a member, nor have I been since December 7, 1941,

---

*The oath and affidavits as originally adopted in August, 1947, were upheld by the District Court of Appeal in *Steiner* v. *Darby*, 88 Cal. App.2d 481 [199 P.2d 429]. On December 5, 1949, under the title of *Parker* v. *Los Angeles County*, 338 U.S. 327 [70 S.Ct. 161, 94 L.Ed. 144], writs of certiorari were dismissed by the United States Supreme Court on the ground that the federal questions presented were "not ripe for decision."

a member of any political party or organization that advocates the overthrow of the Government of the United States or State of California, or County of Los Angeles, by force or violence, except those specified as follows: _____ (the organizations here to be listed embrace all organizations advocating the overthrow of government by force or violence including any of the hereinafter named if they should ever be determined by a court of law to advocate the overthrow of government by force or violence); and that during such time as I am an officer or employee of the County of Los Angeles, I will not advocate nor become a member of any political party or organization that advocates the overthrow of the Government of the United States, or State of California, or County of Los Angeles, by force or violence.

"C. AFFIDAVIT RE ALIASES

"I do further swear (or affirm) that I have never used or been known by any names other than those listed as follows: _____.

"D. MEMBERSHIP IN ORGANIZATIONS

"I do further swear (or affirm) that I have never been a member of, or directly or indirectly supported or followed any of the hereinafter listed organizations, except those that I indicate by an X mark." [Next follows a list of 142 organizations which were selected from those mentioned in one or more of the reports of the Joint Fact-Finding Committee of the California Legislature on Un-American Activities in California.]

All of the facts pertinent to this case were stipulated to by the parties when the matter was before the county civil service commission. It appears that plaintiffs were given an opportunity to take the oath and make the affidavits but did not do so. Thereafter, on April 27, 1948, the board of supervisors ordered all department heads to direct the employees under them to execute the oath and affidavits immediately. Plaintiffs were advised of this order and were informed that refusal to comply would be considered insubordination. On or about May 5th plaintiffs refused to obey the order on the ground that the oath and affidavits were unconstitutional.

On July 20th a new order was adopted by the supervisors which provided as follows: "(1) That unless the employee executes parts A, B and C of the oath and affidavit attached hereto and made a part of this order, by 5:00 P.M. on the 26th

day of July, 1948, that the department head will discharge such employee at that time. (2) That if the employees refuse on the 26th day of July, 1948, to execute paragraph D of said oath and affidavit they will be discharged for such refusal if and when the loyalty test litigation now pending is finally concluded with a determination that the County was justified in requiring from its employees the information embodied in paragraph D." Thereupon plaintiffs were directed by the heads of their departments to execute "parts A, B and C of said oath and affidavit," and they refused to take "the oath and affidavit or parts A, B and C" within the prescribed time. Plaintiffs were notified that they were discharged as of July 26th on the ground of insubordination because of refusal to execute the oath and affidavits in full on May 5th, and refusal to execute parts A, B and C pursuant to the order of July 20th.

The civil service commission held a hearing to review the discharges, and on November 23, 1948, it found and concluded that plaintiffs' "failure to sign the Loyalty Oath and Paragraphs A, B, and C of the Affidavit, after having been ordered to do," justified their dismissals for insubordination. The decision of the commission makes no reference to paragraph D or to plaintiffs' failure to take the oath and make all of the affidavits as directed by the supervisors in their order of April 27, 1948. As noted above, the board's order of July 20, 1948, provided that employees who refused to execute part D "will be discharged for such refusal if and when the loyalty test litigation now pending is finally concluded with a determination that the County was justified in requiring from its employees the information embodied in paragraph D." The "pending" litigation referred to by the supervisors (*Steiner* v. *Darby*, 88 Cal.App.2d 481 [199 P.2d 429]) was not finally concluded when the civil service commission rendered its decision sustaining the discharges. Therefore, under the terms of the board's order, the commission could not properly consider plaintiffs' failure to execute part D as a ground for dismissal, and the commission's decision shows that it was based on and restricted to plaintiffs' refusal to execute paragraphs A, B and C. The trial court concluded that plaintiffs' refusal to execute parts A, B and C constituted insubordination and sufficient cause for discharge, and in view of the commission's decision we may disregard the further conclusion of the trial court that plaintiffs' earlier refusal to execute paragraphs

A, B, C and D likewise furnished sufficient cause for dismissal. It follows that we need not pass upon the issues raised with respect to part D, and inasmuch as plaintiffs stipulate that they do not have, and never did have, any objection to paragraphs A and C, the validity of paragraph B is all that remains to be considered.

Substantially the same provisions as appear in paragraph B are to be found in the oath prescribed by the Levering Act (Gov. Code, §§ 3100-3109), the validity of which was upheld in *Pockman* v. *Leonard, ante,* p. 676 [249 P.2d 267].* There is only one difference between the two which requires discussion. ▮ The employee is directed by paragraph B to swear that he is not, and since December 7, 1941, has not been, a member of an organization which advocates the overthrow of the government by force, except those which he lists in a space provided for that purpose, and immediately under this space appears the following: "(the organizations here to be listed embrace all organizations advocating the overthrow of government by force or violence including any of the hereinafter named if they should ever be determined by a court of law to advocate the overthrow of government by force or violence)." The "hereinafter named" organizations referred to are those listed in paragraph D, and the county concedes that each employee was expected merely to fill out the form in accordance with his information on the date that he executed the document. The quoted language, when properly construed, required plaintiffs to designate only those of the named organizations which they knew advocated overthrow of the government by force, or which to their knowledge had been held by a court to advocate such action. They were not required to speculate upon what the courts might determine in the future. As thus interpreted, the requirement was sufficiently certain to be understood and applied, and it must be sustained under our decision in *Pockman* v. *Leonard, ante,* p. 676 [249 P.2d 267], that public employees may properly be required to furnish information regarding their memberships in organizations which, to their

---

*The Levering Act did not go into effect until after plaintiffs were discharged, and the question of its operation is not involved here. It may be noted, however, that the oath and affidavits which are before us in the present case cannot now be properly required by the county, since the Levering Act has fully occupied the field of legislation on the subject of loyalty oaths for public employees in California. ' (*Bowen* v. *County of Los Angeles, post,* p. 714 [249 P.2d 285]; *cf. Fraser* v. *Regents of University of California, post,* p. 717 [249 P.2d 283].)

knowledge, have advocated the overthrow of the government by force and violence.

The judgment is affirmed.

Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

For the reasons stated in my dissenting opinion in *Pockman* v. *Leonard*, this day filed, *ante*, p. 676 [249 P.2d 267], I would reverse the judgment with directions to the trial court to issue a writ of mandate in accordance with the prayer of plaintiffs' complaint.

Appellants' petition for a rehearing was denied November 14, 1952. Carter, J., was of the opinion that the petition should be granted.

The following opinion was then rendered:

THE COURT. In their petition for rehearing plaintiffs, who are civil service employees of Los Angeles County, claim that the county oath should be invalidated on the ground that the field of loyalty oath requirements for all public employees had been fully occupied by sections 1360 et seq. of the Government Code which provide that every *officer* shall take the constitutional oath before entering upon the duties of his office. The term ''officer'' as used therein clearly includes both state and county officers (see § 1363(b)), but the provisions requiring execution of the oath do not mention *employees* and cannot reasonably be read as applying to all persons in public employment. That the Legislature had no such intent was made clear by the enactment of Government Code, sections 18150 et seq., which specifically extend the oath requirement to all *state* employees. These latter sections would obviously have been unnecessary and meaningless if sections 1360 et seq. were construed as petitioners urge.

There is nothing in *Tolman* v. *Underhill, post,* p. 708 [249 P.2d 280], which is inconsistent with our interpretation of sections 1360-1363 of the Government Code, since the case does not hold that those provisions, standing alone, require all public employees to take the prescribed oath. The opinion proceeds on the theory that sections 1360-1363 and 18150,

must be read together in order to cover all persons in *state* service, both officers and employees.

Nor is any different interpretation of sections 1360-1363 required by reason of our holding in *Pockman* v. *Leonard, ante,* p. 676, 683-684 [249 P.2d 267], that all persons in public employment are protected by the constitutional prohibition against the imposition of religious or political tests as a qualification for "any office or public trust." Our construction of the language of the prohibition as running in favor of all public employees does not constitute a holding that all such persons must execute the constitutional oath and obviously does not compel us to interpret the term "officer" in section 1360 as applying to all persons in public employment.

Government Code, sections 18150 et seq., clearly have no application to persons employed by a county, and under Government Code, sections 1360-1363, the only persons in county service who are required to take the constitutional oath are officers. The field of loyalty oath requirements for all persons in county service was not preempted by statute until the adoption of the Levering Act which expressly requires all county employees to take the oath prescribed therein. (See *Bowen* v. *County of Los Angeles, post,* p. 714, 715-716 [249 P.2d 285].)

The petition for rehearing is denied.

CARTER, J.—Dissenting.

I agree with petitioners that the holdings in the so-called loyalty oath cases are inconsistent and irreconcilable, and it seems to me that the supplemental opinion this day filed does not clarify but adds to the confusion which is the inevitable result of an attempt to reach a certain conclusion without pursuing a course of logical reasoning.

Government Code, section 1360, sets forth an oath identical with that prescribed in section 3, article XX, of the Constitution. Section 1360(3) provides that the oath applies to "officers elected or appointed for any county." In *Pockman* v. *Leonard, ante,* p. 676, 684 [249 P.2d 267], it was held that the word "officers" in section 3 of the Constitution applied to "every state and *local* officer and *employee*" and that such persons could not be required to take any oath but that set forth in the Constitution or one substantially identical thereto. Petitioners argue that the word "officer" in section 1363(3) should be given a similar interpretation and that they, as county employees, were required to take

the oath set forth in section 1360 and that, as in *Tolman* v. *Underhill, post,* p. 708 [249 P.2d 280], the Legislature had preempted the field so as to invalidate the county oath. In the Tolman case, *post,* pp. 708, 712, the court said that "Although the adoption of local rules supplementary to state law is proper under some circumstances, it is well settled that local regulation is invalid if it attempts to impose additional requirements in a field which is fully occupied by statute (citations) . . ." and "As we have already seen, the Legislature has enacted a general and detailed scheme requiring all state employees to execute a prescribed oath relating to loyalty and faithful performance of duty, and it could not have intended that they must at the same time remain subject to any such additional loyalty oaths or declarations as the particular agency employing them might see fit to impose. *Multiplicity and duplication of oaths and declarations would not only reflect seriously upon the dignity of state employment but would make a travesty of the effort to secure loyal and suitable persons for government service.*"

This court now, after holding in *Pockman* v. *Leonard, supra,* that the word "officers" in the Constitution applies to every state and local officer and employee, seeks to distinguish this case on the ground that section 1363(b) cannot "reasonably be read as applying to all persons in public employment. That the Legislature had no such intent was made clear by the enactment of Government Code section 18150 et seq., which specifically extend the oath requirement to all state employees." It is also said that *Tolman* v. *Underhill, supra,* is not inconsistent with the interpretation given sections 1360-1363 of the Government Code, "since the case does not hold that those provisions, standing alone, require all public employees to take the prescribed oath. The opinion proceeded on the theory that sections 1360-1363 and 18150 et seq. must be read together in order to cover all persons in state service, both officers and employees." It appears to me that the argument used here *is* inconsistent with the statement in *Pockman* v. *Leonard.* Why should the word "officers" be given a different interpretation in construing the Constitution from that given it in construing section 1360 et seq. of the Government Code? Article 4 of title 1, of the Government Code is entitled "Oath of Office" (not "Oath of Office" for county *officers*) and chapter 4, title 2, is entitled

"Oaths for *State* Employees." But the latter provision relates back to Article 4 for the "Method and manner of taking, subscribing, and filing oath: Nonmember of civil service" (see section 18152). Both section 1360 (which is said to apply to county officers only) and section 18150 provide that the affiant will faithfully discharge "the *office* of ——" to the best of his ability; yet one is said to relate to officers only and the other to employees and that one may not include the other.

As the majority of the court said in *Pockman* v. *Leonard, supra,* "We are unable to find any place where a line can reasonably be drawn so as to place some positions within and others outside the constitutional prohibition, and, in our opinion, there is no justification for excluding *any public servants* from its protection. The prohibition should therefore be read as applying to every state and local officer and employee. This construction is in accord with the basic purpose of safeguarding the public and its servants by forbidding oaths and declarations regarding matters that bear no reasonable relationship to governmental service *and particularly those that involve political and religious beliefs.* Persons in the lower levels of government are just as much entitled to this protection as those in higher positions." (Emphasis ours.) The supplemental opinion states that *Pockman* v. *Leonard, supra,* holds that all persons in public employment are protected by the constitutional prohibition against "the imposition of religious or political tests as a qualification for 'any office or public trust.'" The oath there was specifically held not to constitute either a religious or political test. I am of the opinion that the holding in the Pockman case goes farther than the court *now* decides that it went. It is my understanding that the word "officers" there was held to include *all* employees, but that the oath involved in that case did not substantially differ from the constitutional oath. I am of the opinion now, as I was then (see dissent, *Pockman* v. *Leonard, ante,* p. 676 [249 P.2d 267]), that if there is no difference between the two, then the Levering Act is a nullity.

In the Tolman case it was held that the state Legislature had expressly provided that the constitutional oath was required of every state employee and, "by a series of statutes, has enacted a general and comprehensive scheme relating to execution and filing of the oath by all such persons" and that "Where the Legislature has adopted statutes governing

a particular subject matter, its intent with regard to occupying the field to the exclusion of all local regulation is not to be measured alone by the language used but by the whole purpose and scope of the legislative scheme." What was said in the Tolman case with respect to legislative preemption of the field is as applicable to county employees as it was to state employees and it is my opinion that they may be required to take only the constitutional oath which is set forth in sections 1360 et seq. of the Government Code together with the method and manner of taking the same. There is no merit to the argument that the constitutional oath provision is not self-executing; the Legislature has provided that the oath there set forth shall be taken and the manner in which it is to be done in that article of the Government Code (4) entitled "Oath of Office." Therefore, if the Legislature did not preempt the field by the last mentioned statutes, it certainly did not do so by the Levering Act. Furthermore, if the Legislature could not prescribe any other oath than that set forth in section 3 of article XX of the Constitution, such restriction should apply to all other legislative bodies in the state, and thus render the oath here involved invalid.

I would therefore grant a rehearing in this and all companion cases.