[L. A. No. 24586. In Bank. Feb. 25, 1958.]

WEST COVINA ENTERPRISES, INC. (a Corporation), Respondent, v. JOHN H. CHALMERS, Appellant.

Louis M. Welsh and David H. Thompson for Appellant.

Morrow & Morrow and John C. Morrow for Respondent.

SHENK, J.—This is an appeal on the judgment roll from a judgment for the plaintiff in an action to recover damages for the breach of a contract to render architectural services in connection with the construction of an addition to a hospital.

The defendant is an architect licensed to practice in the State of Nebraska. He is not licensed in the State of California, nor does he hold a temporary certificate to act as an architect in this state. In April 1954 the plaintiff and the defendant signed a contract dated January 2, 1954. The contract provides in part as follows:

". . . Chalmers is not an architect [licensed to practice in California] . . . Chalmers, because of his education, training and experience, can prepare for Owner plans, drawings and specifications for said hospital addition and is willing to assist Owner in the construction and finishing of said building and . . . Owner desires to employ Chalmers for the period of time necessary to complete such work . . . the parties hereto agree as follows:

"1. That Chalmers shall be employed by Owner and shall:

"A. Prepare for Owner plans, drawings and specifications for said building including preliminary plans, final and working drawings and specifications complying with the requirements and regulations of the California State Department of Public Health, the California State Fire Marshal, the United States Department of Public Health and United States Civil Defense Administration including such large scale and full sized detailed drawings for architectural, structural, plumb-

ing, heating, electrical, other mechanical work and engineering reports as are necessary for purposes of construction.

"B. Obtain the approval of said final and working drawings and specifications of any of the aforesaid agencies whenever the same may be necessary to obtain financing of the construction of said building.

"C. Assist . . . in obtaining the services of a general contractor. . . .

"D. Inspect the building during construction. . . .

"E. Approve bills for costs of construction. . . .

"2. That Owner shall pay to Chalmers as salary the sum of Seven Hundred Fifty Dollars . . . a month for each month from February through December, 1954. . . .

"4. That preliminary plans for the erection of said building shall be completed on or before May 1, 1954, and final working drawings and specifications shall be completed and twelve . . . copies of the same submitted to Owner on or before September 1, 1954.

"5. That Chalmers may obtain the assistance of other individuals to assist him in his work hereunder but they shall not be employees of Owner and Owner shall be under no obligation to compensate such individuals or to reimburse Chalmers for such expenses as may be incurred by him in connection therewith. . . .

"9. That this agreement shall constitute the entire contract with respect to this matter."

The defendant began work in February 1954. He prepared some preliminary drawings which were found by the trial court to be incomplete, not in accordance with the agreement, and of no value to the plaintiff. The defendant did not complete any of the final or working drawings, plans, or specifications as required by the contract.

In October 1954 the defendant repudiated the contract on the ground that performance by him was illegal because he was not licensed to practice architecture in California.

The trial court found against the defendant, denied him relief on his cross-complaint, and rendered judgment for the plaintiff for $13,075 of which $6,375 was for salary theretofore paid by the plaintiff to the defendant and $6,700 of which was for the difference between the salary to which Chalmers was entitled under the contract and the fee paid to the architect who undertook to design and construct the building after Chalmers' repudiation.

An unlicensed person may render architectural services in this state if, prior to performing any service, he informs his client in writing that he is not a licensed architect. (Bus. & Prof. Code, § 5537.) The preparation of hospital plans and specifications, however, is regulated by the Department of Public Health pursuant to rules and regulations adopted under section 1411 of the Health and Safety Code. Title 17, section 406 of the California Administrative Code provides:

"(a) Architectural plans and specifications for new construction, additions, alterations or repair of any buildings to be licensed and operated as hospitals as defined in Title 17, Group 2 of the Administrative Code shall be submitted to the State Department of Public Health for review and approval prior to commencement of construction. . . .

"(b) Plans and specifications shall be prepared by a duly licensed architect or registered civil engineer.

"(c) Plans shall be submitted in two stages:
    (1) Preliminary drawings and
    (2) Working drawings and specifications."

The trial court made the following conclusion of law: "Said written agreement was not illegal or unlawful in any particular, either at the time it was executed or thereafter, nor was the performance thereof by either party thereto illegal, unlawful, or impossible. Said written agreement was not void or voidable by either party thereto."

It is the defendant's contention that the findings of fact which paraphrase the foregoing provisions of the contract and recite the above quoted sections of the Administrative Code do not support that conclusion.

It should be noted that the appeal is presented on the clerk's transcript and certain exhibits. The error is claimed to appear on the face of the record. Thus, in the absence of proceedings to augment the record, it will be presumed that it contains all matters material to a determination of the points on appeal. (Rule 52, Rules on Appeal; see also 3 Witkin, California Procedure, pp. 2239-2243.)

If section 406 is a valid administrative regulation, it is clear that Chalmers could not have rendered a lawful performance without first obtaining a license (Bus. & Prof. Code, §§ 5550, 5551), or a temporary certificate (Bus. & Prof. Code, § 5540.) The plaintiff contends that an obligation to obtain a license was enjoined upon the defendant by the contract. The contract contains two recitals relevant to

the determination of that issue. First, it states that Chalmers "is not an architect." Second, it provides that ". . . Chalmers, because of his education, training and experience, can prepare for Owner plans, drawings and specifications for said hospital addition. . . ." It is apparent from the terms of the contract that the respondent entered into the agreement with full knowledge of the extent of Chalmers' qualifications; that it knew that Chalmers was not licensed to practice architecture in California and that he had no temporary certificate to practice architecture in this state. If the contract is the sole measure of the defendant's obligations, it is clear that he cannot be required to obtain an architect's license or a temporary certificate. It is contended, however, that because the defendant could have legally performed the contract by first obtaining a temporary certificate or a license to practice architecture, he was not precluded from rendering a lawful performance by section 406. █ It is a familiar rule that where a contract does not provide for an illegal mode of performance, but may be lawfully performed, it will be assumed that the parties contracted for a lawful performance. (*Burne* v. *Lee*, 156 Cal. 221 [104 P. 438]; *Vagim* v. *Brown*, 63 Cal.App.2d 504 [146 P.2d 923].) █ █ The present contract is not, however, of that nature. It recites that it contains the whole agreement and an examination of that agreement shows that it was assumed by the parties that the defendant possessed all of the qualifications essential to a lawful performance. To now require a different performance would impose upon the defendant a burden which he did not assume under the contract. Had it been intended that the defendant should obtain a license, it would have been no task to have so provided in the contract. The finding that before entering into the agreement the defendant orally informed the plaintiff that he intended to obtain a license does not affect that conclusion. The contract purports to be a complete integration and the findings of fact are silent as to what effect, if any, such a statement could have had upon the present contract. Moreover, the finding that the contract was drawn by the plaintiff's attorney tends to support the construction which is now placed upon it. (See *Thomas* v. *Hunt Mfg. Corp.*, 42 Cal.2d 734, 739 [269 P.2d 12].)

█ The plaintiff urges that because the contract authorized the defendant to ". . . obtain the assistance of other individuals to assist him in his work. . . ." Chalmers could

have lawfully performed the contract by associating a licensed architect. Although Chalmers was so authorized, he was not authorized to delegate the duty of designing the hospital to a third party under the guise of obtaining the "assistance of other individuals." Moreover, it cannot be said that the preparation of plans and specifications by Chalmers personally, but with the assistance of a licensed architect, would have met the requirement of section 406 that plans and specifications be prepared by a "duly licensed architect."

The plaintiff contends that section 406 is not a valid regulation, that it is unreasonable, not related to any statutory purpose, and that it conflicts with section 5537 of the Business and Professions Code.

Section 1411 of the Health and Safety Code provides: "The State department . . . shall make . . . reasonable rules and regulations to carry out the purpose of this chapter, classifying hospitals and prescribing minimum standards of safety and sanitation in the physical plant, of diagnostic, therapeutic and laboratory facilities and equipment . . . of hospitals." The purpose of that section was to enable the Department of Public Health to make rules providing for the safety and sanitation of hospital buildings. It is clear that the requirement of section 406 that hospital buildings be designed by persons of proved ability as evidenced by the certification of the State Board of Architectural Examiners is reasonably related to accomplishment of that purpose.

Nor is the contention that the regulation conflicts with section 5537 of the Business and Professions Code meritorious. That section provides: "This chapter does not prevent any person from making any plans or drawings for his own buildings or from furnishing to other persons, plans, drawings, specifications, instruments of service, or other data for buildings, if, prior to accepting employment or commencing work on such plans, drawings, specifications, instruments of service, or other data, the person, so furnishing such plans, drawings, specifications, instruments of service, or data, fully informs such other person or persons, in writing, that he . . . is not an architect." The obvious purpose of that section is to except from the general licensing provisions of the code those persons who, upon written disclosure of the fact that they are unlicensed, seek to provide architectural services. It does not confer upon all persons for all purposes the right to design buildings in this state.

Section 1417 of the Health and Safety Code provides: ''Any person who violates any of the provisions of this chapter or of the rules and regulations promulgated under this chapter is guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not to exceed five hundred dollars . . . or by imprisonment in the county jail for a period not to exceed 180 days or by both such fine and imprisonment.''

As stated, section 406 of the Administrative Code was adopted pursuant to section 1411 of that chapter. In view of the fact that the contract required a performance in violation of section 406 such conduct would have been punishable under section 1417. Recovery under the facts of this case would give effect to an unlawful bargain. The defendant was therefore justified in refusing to proceed further under the contract.

The judgment is reversed.

Gibson, C. J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

CARTER, J.—I dissent.

I cannot agree with the majority that the contract involved here is illegal on the ground that it violates section 406, title 17, of the California Administrative Code, inasmuch as the provisions of section 5537 of the Business and Professions Code expressly permit a contract between an unlicensed architect and client upon the former's disclosure that he is unlicensed.

We are dealing here with a code section (Bus. & Prof. Code, § 5537) enacted by the Legislature and a regulation adopted by an administrative agency pursuant to enabling legislation. The fact that this regulation appears within the California Administrative Code does not raise the regulation to the comparable status of a code section passed by the Legislature since the ''Administrative Code'' is not a code as such but only the conglomeration of all the rules and regulations adopted by state agencies and filed with the secretary of state (Gov. Code, § 11370 et seq.). Where on one hand there is a law passed by the Legislature under its general police power, and on the other hand a regulation adopted by a state agency, laws enacted by the Legislature will prevail over regulations made by the administrative agency with regard to matters which are not exclusively that agency's affairs (see *Tolman* v. *Underhill,* 39 Cal.2d 708, 712 [249 P.2d 280]; *Wilson* v.

*Beville,* 47 Cal.2d 852, 859 [306 P.2d 789] ; *La Societe Francaise* v. *California Emp. Com.,* 56 Cal.App.2d 534, 554 [133 P.2d 47] ; *Hamblin* v. *State Personnel Board,* 148 Cal.App.2d 53, 55 [306 P.2d 118] ; *cf., Hirschman* v. *County of Los Angeles,* 39 Cal.2d 698, 703 [249 P.2d 287, 250 P.2d 145]).

To determine whether or not the Legislature has undertaken to occupy exclusively a given field of legislation depends on an analysis of the statute and a consideration of the facts and circumstances on which it was intended to operate (see *Tolman* v. *Underhill, supra,* 39 Cal.2d 708, 712). Moreover where the Legislature has enacted statutes governing a particular subject matter, its intent to occupy the field preempting other regulations is not to be measured by the language alone but by the whole purpose and scope of the legislative scheme (see *Tolman* v. *Underhill, supra,* 39 Cal.2d 708, 712).

It is clear that the Legislature of California has attempted to regulate the practice of architecture in this state. It has seen fit to require an architect desiring to practice here to obtain a license and his failure to do so is a misdemeanor (Bus. & Prof. Code, § 5536). However, it has also written an exemption into this licensing requirement in section 5537, by which an architect may practice even though unlicensed, if he makes a written disclosure to his client of the fact he is unlicensed. The determinative question before us is whether this exemption is intended by the Legislature to occupy exclusively the matters of architectural licensing. The majority answers this question by stating that "It [Bus. & Prof. Code, § 5537] does not confer upon all persons for all purposes the right to design buildings in this state." This answer would appear to beg the question, but in addition it is inadequate for the reason that there is no attempt to explore the situations and conditions upon which section 5537 is intended to operate, as is required by the principles heretofore stated.

Section 5537 of the Business and Professions Code permits an unlicensed person to perform services constituting the practice of architecture if he gives written notice that he is not an architect. The policy underlying this section has been stated to be the prevention of unlicensed persons from preparing plans and specifications unless the client knows and is informed that such person is unlicensed. (*W. M. Ballard Corp.* v. *Dougherty,* 106 Cal.App.2d 35, 41 [234 P.2d 745].) In more concrete terms the statutory notice is provided for the benefit of the owner merely to place him on his guard as to whether or not he wishes to employ an uncertified person

(see *Van Doren* v. *Burns*, 106 Cal.App. 224, 226 [288 P. 1107]).

It is clear from the cases that the exemption provisions of section 5537 are intended to operate for the benefit of all owners. There is no attempt to restrict the exemption to certain owners and exclude others; the statute by its terms appears all encompassing.

However this statement of legislative policy is too uncertain and not conclusive on the question of intent to occupy the field of architecture licensing, and further analysis is necessary.

The key to the ascertainment of the legislative intent is found in the reason for creating such an exemption. The most obvious reason, and the one I believe makes sense, is to enable the citizens of California to have access to architects licensed in other states but who are unlicensed in this state. This exemption, when so interpreted, recognizes the individualistic disposition of an architect and the attempts architects make to preserve the integrity of their individual expression. In other words if a citizen of California admires the work of a New York architect and wishes to employ him he may do so, and the architect in turn would be able to work unfettered by any association with California architects, preserving the individuality of his work. It is clear that without such exemption a California citizen could only employ a non-resident unlicensed architect where the latter would be required to work with a certified California architect, and this could well be an unacceptable condition to an architect who places the individual nature of his work in a paramount position. The exemption appears to be realistic in that the Legislature recognized the desirability of permitting architects from other states, and indeed other countries, to practice in California in a manner by which they can express their individual ideas unimpeded by others. Therefore, in its broader aspects the exemption is an attempt by the Legislature to eliminate provincialism in architecture.

To be successful this attempt must be exclusive and not subject to exceptions. If the Department of Public Health is permitted to deal with the licensing of architects, then logically other administrative agencies may likewise carve out exceptions subject only to constitutional limitations. But if this were permitted the reason for allowing unlicensed architects to practice in California would be defeated. Thus,

in order to effectuate the reasons behind section 5537, its application must be deemed exclusive, and any regulation that abridges this application must fail. (See *Tolman* v. *Underhill, supra,* 39 Cal.2d 708.)

This conclusion does not undermine the Department of Public Health in their supervision over hospitals since all plans for hospitals must be submitted to them and disapproved if they are defective (17 Cal. Admin. Code 406). Moreover, the department may disapprove plans even though the architect submitting them is licensed in California. So, in fact, whether or not a person is licensed is immaterial to the approval or disapproval. It is further evident that there is no more assurance that an architect licensed by the State of California will be any more able to submit qualified plans for a hospital than a licensed architect from any other state. Any assumption to the contrary appears to suggest the provincialism that section 5537 was designed to avoid.

For the reasons above stated it would appear that the contract here involved is valid under section 5537 of the Business and Professions Code, and plaintiff is therefore entitled to recover damages for its breach.

I would therefore affirm the judgment.