[Civ. Nos. 20960-20965.   Second Dist., Div. Two.   Oct. 25, 1955.]

BOARD OF EDUCATION OF THE CITY OF LOS AN-
GELES et al., Respondents, v. MINNA OMANOFF
COOPER et al., Appellants; and Consolidated Cases.

Wirin, Rissman & Okrand, William B. Esterman, A. L. Wirin and Fred Okrand for Appellants.

Harold W. Kennedy, County Counsel (Los Angeles), William E. Lamoreaux, Clarence H. Langstaff, Baldo Kristovich and James W. Briggs, Deputy County Counsel, for Respondents.

McCOMB, J.—These six actions are appeals by defendants following trials without a jury, from judgments in favor of plaintiffs, Board of Education of the city of Los Angeles in five of the actions, and Board of Education of the Norwalk City Elementary School District in one action, adjudging that plaintiffs may dismiss defendants as certificated employees of the respective school districts governed by said boards of education.

*Facts*: The California Legislature, in 1953, added chapter 2 to division 7 of the Education Code, comprising sections 12600 to 12607, also section 14130.5, and amended sections 13521 and 13526 of said code. All of these provisions related to school district employees.

This statute, commonly called the Dilworth Act, provides:

(1) Legislative findings as to the nature, extent and objectives of the world-wide Communist movement, the pres-

ence in California of active disciplined Communist organizations, the objective of such organizations to place their members in public school system positions, and the clear and present danger that Communist organizations in California and their members will seek to hamper the efforts of local school boards to comply with and enforce section 8275, Education Code. (Ed. Code, § 12600.) Section 8275 prohibits the teaching of Communism so as to undermine a pupil's patriotism for and belief in the government of the United States and of this state.

(2) After September 9, 1953, no person knowingly a member of the Communist Party shall be employed or retained in employment by a school district (Ed. Code, §§ 12601, 12603 and 12606.) It permitted continuance of employment upon disavowal of Communist Party membership. (Ed. Code, § 12602.)

(3) It is the duty of school district employees to answer under oath before legislative committees or before their employing school boards certain questions set forth in sections 12604 and 12605. A failure or refusal to answer such questions is ground for suspension and dismissal. (§§ 12604, 12605, last paragraph of Ed. Code, §§ 12600, 12607, 13521, subds. (a) and (j), and 13526.)

Sections 12604, 12605, 12600 (last paragraph) and 12607, Education Code, read as follows:

''12604. It shall be the duty of any employee of any school district who may be subpoenaed by a United States Congressional Un-American Activities Committee or subcommittee thereof or a California Legislative Un-American Activities Committee or a subcommittee thereof or any other committee or subcommittee of the United States Congress or the California Legislature or of either house of either thereof to appear before said committee or subcommittee and specifically to answer under oath a question or questions propounded by any member or counsel of the committee or subcommittee relating to:

''(a) Present personal advocacy by the employee of the forceful or violent overthrow of the Government of the United States or of any state or political subdivision.

''(b) Present knowing membership in any organization which, to the knowledge of such employee, advocates the forceful or violent overthrow of the Government of the United States or of any state or political subdivision.

''(c) Past knowing membership at any time since Sep-

tember 10, 1948, in any organization which, to the knowledge of such employee, during the time of the employee's membership advocated the forceful or violent overthrow of the Government of the United States or of any state or political subdivision.

"(d) Past knowing membership of such employee in the Communist Party at any time since September 10, 1948.

"(e) Present knowing membership of such employee in the Communist Party.

"Any employee who fails or refuses to answer under oath on any ground whatsoever any such question propounded by any member or counsel of any such committee or subcommittee shall be guilty of insubordination and guilty of violating this section and shall be suspended and dismissed from his employment in the manner provided by law.

"12605. It shall be the duty of any employee of any school district who is ordered to appear before the governing board of the employing school district to appear and specifically to answer under oath a question or questions propounded by a member or counsel of the governing board or by the superintendent of schools relating to any of the matters specified in Section 12604.

"Any employee who fails or refuses to appear or to answer under oath on any ground whatsoever any such question propounded by a member or counsel of the governing board or by the superintendent of schools shall be guilty of insubordination and guilty of violating this section and shall be suspended and dismissed from his employment in the manner provided by law.

"12600. . . . The Legislature further specifically finds that an indirect or evasive answer to a question relating to any of the matters specified in Section 12604 or 12605, or an answer which neither affirms nor denies shall, for the purposes of this act and chapter, be considered as a failure and refusal to answer, regardless of the ground or explanations given for any such answer. (Last paragraph of § 12600.)

"12607. Any certificated employee of a school district who violates any of the provisions of Sections 12601 to 12606, inclusive, of this code shall be guilty of unprofessional conduct and shall be suspended and dismissed in the manner provided by law."

Sections 13521 and 13526 of the code, which set forth the causes for dismissal and immediate suspension of a certificated employee, were amended by adding to such causes

violation of any provisions of sections 12601 to 12607, inclusive, and knowing membership in the Communist Party.

Pursuant to the above provisions, appellants were ordered to and did appear before their respective governing boards, were duly sworn, and the following questions asked of each of them by counsel for the respondents:

"Are you knowingly a member of the Communist Party?"

"Were you knowingly a member of the Communist Party at any time during the year 1953?"

"Were you knowingly a member of the Communist Party at any time during the year 1952?"

"Were you knowingly a member of the Communist Party at any time during the year 1951?"

"Were you knowingly a member of the Communist Party at any time during the year 1950?"

"Were you knowingly a member of the Communist Party at any time during the year 1949?"

"Were you knowingly a member of the Communist Party at any time during the year 1948 subsequent to the date of September 10th of that year?"

"Were you at any time since September 10, 1948, knowingly a member in any organization which, to your knowledge during the time of your membership, advocated the forceful or violent overthrow of the Government of the United States, or of any state or political subdivision?"

"Are you now knowingly a member in any organization which, to your knowledge, advocates the forceful or violent overthrow of the Government of the United States, or of any state or political subdivision?"

"Do you now personally advocate the forceful or violent overthrow of the Government of the United States, or of any state or political subdivision?"

Appellants refused to answer any of said questions (appellant Cooper refused to answer only the first 7 questions) but instead launched into indirect and evasive statements of more or less length which neither affirmed nor denied the questions asked. Each of said appellants was accompanied by his or her own counsel, with whom each was permitted to and did freely confer.

Typical of the refusals to answer is the following testimony of appellant Kaye in the Los Angeles transcript:

"Mr. Lamoreaux: Were you knowingly a member of the Communist Party at any time during the year 1953?

"Mrs. Kaye: I refuse to answer that question.

"Mr. Lamoreaux: Were you knowingly a member of the Communist Party at any time during the year 1952?

"Mrs. Kaye: I refuse to answer that question.

"Mr. Lamoreaux: Were you knowingly a member of the Communist Party at any time during the year 1951?

"Mrs. Kaye: I refuse to answer that question.

"Mr. Lamoreaux: Were you knowingly a member of the Communist Party at any time during the year 1950?

"Mrs. Kaye: I refuse to answer that question.

"Mr. Lamoreaux: Were you knowingly a member of the Communist Party at any time during the year 1949?

"Mrs. Kaye: I refuse to answer that question.

"Mr. Lamoreaux: Were you knowingly a member of the Communist Party at any time during the year 1948, after September 10th of that year?

"Mrs. Kaye: I refuse to answer that question.

"Mr. Findlay: You can't be heard down here very well, I'm sorry.

"Mrs. Kaye: It is the same answer. I refuse to answer on any grounds—any questions that concern my political beliefs or affiliations or associations. . . .

"Mr. Lamoreaux: Mrs. Kaye, were you at any time since September 10, 1948, knowingly a member in any organization which, to your knowledge during the time of your membership, advocated the forceful or violent overthrow of the Government of the United States or any state or political subdivision?

"Mrs. Kaye: I refuse to answer that question on the same basis.

"Mr. Lamoreaux: Are you now knowingly a member of any organization which, to your knowledge, advocates the forceful or violent overthrow of the Government of the United States or any state or political subdivision?

"Mrs. Kaye: I refuse to answer that question.

"Mr. Lamoreaux: Do you now personally advocate the forceful or violent overthrow of the Government of the United States, or of any state or political subdivision?

"Mrs. Kaye: I refuse to answer that on the basis that my opinions, ideas and beliefs are my own.

"Mr. Lamoreaux: I have no further questions, Doctor.

"President Willett: Thank you, Mr. Lamoreaux.

"Mr. Wirin: She has not quite completed.

"Mr. Lamoreaux: Oh, pardon me. I thought she had.

"Mrs. Kaye: In further answer to that last question——

"Mr. Findlay: You can't be heard. I'm sorry.

"Mrs. Kaye: In further answer to that last question, I feel that I am loyal to the Constitution of this State and of the United States and will uphold them.

. . . . . . . . . . . . .

"Mrs. Kaye: In regard to the last three questions that were asked of me, I would like to extend on my answer. I am aware of what the questions are. I think you are, too, because of their repetition, so if it is all right with you, could I state my——

"Mr. Lamoreaux: Yes, indeed, Mrs. Kaye.

"Mrs. Kaye: ——extension? When I came into the Los Angeles City School District, I took the Levering oath, which stated that I do not belong to any organizations or parties that believe in, or advocate the forceful or violent overthrow of the government—something like that. I am doing it in effect. I don't have this oath before me. This oath stands of today, because it said in it that I will not, and that is what I swore before, and since it said in there I will not, it stands today. I think that the oath, in itself, would have been enough for you to know the answer to those questions, my taking of that oath."

After said proceedings had been completed the respective governing boards took action suspending appellants and notifying them of their intention to dismiss, in conformance with the provisions of section 13522 of the Education Code, as a result of which the proceedings below were instituted. The trial court found in each case that the defendant therein failed and refused to answer the questions asked, and concluded that each defendant was guilty of violating section 12605 of the Education Code, of unprofessional conduct and evident unfitness for service, and that sufficient grounds existed for the suspension and dismissal of said defendant.

*Question*: First: *Does refusal of a public school teacher to answer under oath, before the Board of Education by which he or she is employed, specific questions as to his or her membership in the Communist Party and allied questions constitute cause for dismissal under sections 12604 and 12605 of the Education Code?*

*Yes.* From the above statement of facts it is apparent that that these actions in all essential aspects are identical with the situation presented in *Board of Education* v. *Eisenberg*, 129 Cal.App.2d 732 [277 P.2d 943] (hearing denied by the Supreme Court) and *Steinmetz* v. *California State Board of Education*, 44 Cal.2d 816 [285 P.2d 617], except that the

later case was based upon the Luckel Act (Stats. 1953, chap. 1646), which was modeled after and is of similar import to the Dilworth Act (Stats. 1953, chap. 1632), both having been enacted by the same Legislature. Section 1028.1, added to the Government Code by the Luckel Act, is substantially identical to sections 12604 and 12605, added to the Education Code by the Dilworth Act, making the public employee's refusal to answer certain questions a ground for his suspension and dismissal. The last section of the Luckel Act provides:

"Section 4. The provisions of this act shall not be applicable to school district employees, it being the intent of the Legislature that similar provisions be made in the Education Code for such employees by other acts."

The Dilworth Act is the "other act" applicable to school district employees. ■ The Dilworth Act and the Luckel Act, together, cover all public employees in California subject to control of the state Legislature.

■ Defendants contend as follows:

1. The Dilworth Act on its face violates due process of law under the holding in *Wieman* v. *Updegraff*, 344 U.S. 183, 193 [73 S.Ct. 215, 97 L.Ed. 216].

2. It constitutes special legislation.

3. It is a bill of attainder.

4. It offends the principle of separation of powers.

5. It is unconstitutional as applied to appellants.

6. The appellants complied by answering the questions.

All these contentions have been resolved against defendants by the appellate courts of this state in the case of *Board of Education* v. *Eisenberg, supra,* and *Steinmetz* v. *California State Board of Education, supra.* In the Eisenberg case the dismissal of a Los Angeles County school teacher was upheld. The teacher, who, while appearing as a sworn witness before a legislative fact-finding committee, refused to answer the question, "Are you a member of the Communist Party of Los Angeles County?" At the time of her appearance before the committee, a board rule adopted by the Board of Education of the city of Los Angeles required employees of the Los Angeles city school district, when testifying before such committee, to answer questions pertaining to membership in the Communist Party. The rule further provided that a teacher who refused to answer such questions would be guilty of insubordination and unprofessional conduct and was to be dismissed in the manner provided by law. The board rule was, in all respects which are material to these appeals,

the same as the Dilworth Act here involved. The trial court entered judgment authorizing her dismissal. On her appeal to this court from that judgment she urged substantially the same arguments as numbers 1, 5 and 6 of those which are summarized above. Mr. Presiding Justice Moore, in holding that these arguments were without merit and that her dismissal was justified, made the following pertinent comments:

"In view of the findings that there is a present, imminent danger that communist organizations in the district will engage in a concerted undertaking to hamper the efforts of the board to comply with section 8275 of the Education Code and in view of appellant's obligation to inform the board whether she is a member of a communist organization whose tenets she was forbidden to impart to her students, it cannot with reason be said that the adoption of its rule on September 22, 1952, was unreasonable or that it conflicts with the appellant's constitutional guaranties."

The court at page 738, distinguished the case of *Wieman* v. *Updegraff, supra,* 344 U.S. 183, strongly urged by appellant in support of her contentions. On the question of due process, this court said on the same page:

"In the case at bar, the question was whether appellant was a member of an organization which is proscribed in the board's rule. She knew the rule's contents. The incidents of due process had been meticulously observed, notwithstanding former holdings that due process of law does not require that a teacher must have had knowledge of the activities or purposes of the Communist Party. (*Wieman* v. *Updegraff, supra*; *Galvan* v. *Press,* 347 U.S. 522 [74 S.Ct. 737, 98 L.Ed. 911].)"

In the Eisenberg case, as here, it was argued, in effect, that because the appellant had previously taken the Levering oath of allegiance she could not be compelled to answer questions respecting her Communist Party affiliations. The court answered this argument at page 737, as follows:

"A public school teacher's refusal to answer before a legislative committee whether she is a member of the Communist Party is the only question involved in this action. Neither the board nor the Legislature itself deemed a compliance with the Levering Act sufficient protection for the public. A teacher must answer directly that she is or is not a member. Past pledges or oaths of loyalty are not sufficient for the school board which has jurisdiction over a vast empire of

wealth, pupils and teachers. Its responsibility impels it to require every teacher to stand and be counted. . . ."

Inasmuch as the Dilworth Act is practically identical in its aims, purposes and wording with the board rule there involved, and since it cannot be successfully argued that the Legislature has less power than the Board of Education in prescribing qualifications for public school employees, the Eisenberg case is controlling here.

In *Steinmetz* v. *State Board of Education, supra,* a mandamus proceeding was instituted to compel reinstatement of an associate professor at San Diego State College who had been dismissed for his refusal to answer two questions as to whether he was or had been a member of the Communist Party at a hearing before the State Board of Education. The proceeding before the state board was conducted pursuant to section 1028.1 of the Government Code, which is part of a statute known as the Luckel Act. That section provides that it is the duty of any public employee, when required, to appear before the governing board of the public entity employing him and answer under oath questions relating to the identical matters set forth and referred to in sections 12604 and 12605 of the Education Code. The same arguments were there presented with respect to the Luckel Act as have been urged by appellants in the instant cases with respect to its parallel legislation, the Dilworth Act, to wit:

1. That the act on its face violated due process of law under the holding in *Wieman* v. *Updegraff,* 344 U.S. 183 [73 S.Ct. 215, 97 L.Ed 216].

2. That the act constituted special legislation.

3. That it was a bill of attainder.

4. That it offended the principle of separation of powers.

5. That it was unconstitutional as applied to petitioner.

6. That petitioner had complied by answering the questions.

In holding that these arguments were without merit and in denying the writ of mandate, the Supreme Court in *Steinmetz* v. *California State Board of Education,* 44 Cal.2d 816 [285 P.2d 617], speaking through Mr. Chief Justice Gibson, made the following pertinent remarks at page 822 et seq., which are fully applicable to the Dilworth Act:

"Section 1028.1, considered as a whole, shows on its face that the Legislature, in using the words 'knowing membership,' was referring to a person's knowledge of his membership, rather than to his knowledge of the character of the organization. . . . It thus was proper, under the terms of

subdivision (d), to question petitioner as to the fact of membership without reference to his knowledge of the character of the organization, and the questions on this point which he refused to answer were not covered by his denials that he was knowingly a member with knowledge of the nature of the party.

"The statute under which petitioner was dismissed is not rendered invalid by the fact that it requires an employee to answer questions as to his membership in the Communist Party without regard to his knowledge of the nature of the party. Petitioner's discharge was not because of membership in a proscribed organization but because of his refusal to answer questions as to whether or not he held membership in the Communist Party. A governmental body may, of course, make reasonable inquiries into matters pertaining to the fitness of its employees. Loyalty on the part of those in public employment is important to orderly and dependable government and is, therefore, relevant to fitness for such employment. (*Pockman* v. *Leonard*, 39 Cal.2d 676, 687 [249 P.2d 267].) An employee's associates, as well as his conduct, are factors which may be considered by a state agency in determining his loyalty, and information on that subject may properly be elicited from him. (*Adler* v. *Board of Education*, 342 U.S. 485, 492-493 [72 St.Ct. 380, 72 L.Ed. 517, 27 A.L.R.2d 472]; *Pockman* v. *Leonard*, 39 Cal.2d 676, 685-687 [249 P.2d 267].) In this connection, it has been held that a public employer may constitutionally require its employees to disclose any past or present membership in the Communist Party. (*Garner* v. *Board of Public Works*, 341 U.S. 716, 720 [71 S.Ct. 909, 95 L.Ed. 1317].)

"Statutes, such as the one involved here, which compel disclosure of information concerning a public employee's membership in proscribed organizations, must be distinguished from those which provide for discharge or disqualification because of membership or refusal to take an oath denying membership. Under the latter type of statute, knowledge of the character of the organization has been held essential (*Wieman* v. *Updegraff*, 344 U.S. 183 [73 S.Ct. 215, 97 L.Ed. 216]), and the legislation has been sustained only when it expressly or impliedly required such knowledge (*Adler* v. *Board of Education*, 342 U.S. 485, 494 [72 S.Ct. 380, 96 L.Ed. 517, 27 A.L.R.2d 472]; *Garner* v. *Board of Public Works*, 341 U.S. 716, 723-724 [71 S.Ct. 909, 95 L.Ed. 1317]; *Gerende* v. *Board of Supervisors*, 341 U.S. 56, 57 [71 S.Ct. 565, 95 L.

Ed. 745] ; *Pockman* v. *Leonard,* 39 Cal.2d 676, 685 [249 P.2d 267] ; *Hirschman* v. *County of Los Angeles,* 39 Cal.2d 698, 702 [249 P.2d 287, 250 P.2d 145]). On the other hand, where the statutes provide merely for the disclosure of information, a requirement that the employee have knowledge of the nature of the organization is not necessary. (See *Garner* v. *Board of Public Works,* 341 U.S. 716, 719-720 [71 S.Ct. 909, 95 L.Ed. 1317] ; *Adler* v. *Board of Education,* 342 U.S. 485, 492-493 [72 S.Ct. 380, 96 L.Ed. 517, 27 A.L.R.2d 472].)''

On the argument that the Luckel Act constituted a special law, the Chief Justice, at page 825, said:

''Section 1028.1 does not violate the provision of the California Constitution which prohibits the passage of special laws in certain enumerated cases and 'in all other cases where a general law can be made applicable.' (See Cal. Const., art. IV, § 25, subds. 1-33.) This section does not fall within any of the enumerated categories, and, insofar as any of its provisions are specific, no general law could have been made applicable. The Legislature, desiring to authorize inquiry as to membership in the Communist Party, could do so only by naming it. The designation of that organization was not arbitrary, but was reasonably related to the purpose of the legislation, since, as we have seen, information as to membership in the party is pertinent to fitness for public employment. The case of *Communist Party* v. *Peek,* 20 Cal.2d 536 [127 P.2d 889], is readily distinguishable. The statute there held invalid denied the Communist Party a place on the ballot, and regulation of elections is listed in the Constitution as one of the areas where a special law is prohibited. (Cal. Const., art IV, § 25, subd. 11.) The basis of the decision in that case was that, in the absence of evidence, the court would be required to take judicial notice of the subversive character of the Communist Party in order to uphold the statute as reasonable and that judicial notice to that effect could not be taken under the conditions then existing.''

Although the majority opinion in the Steinmetz case did not discuss the bill of attainder argument, the dissenting opinion makes it clear that the point was fully urged upon the court. Not only is it clear that the majority in the Steinmetz case rejected the bill of attainder argument; it is also clear that the United States Supreme Court has fully refuted that argument in the case of *American Communications Assn.* v. *Douds,* 339 U.S. 382 [70 S.Ct. 674, 94 L.Ed. 925].

Under the Dilworth Act, any teacher could have been a

member of the Communist Party on the date of the passage of the statute and would suffer no penalty therefor. He had 90 days in which to terminate membership in the Communist Party. After terminating membership, he would be completely eligible to remain in his position as a public school teacher. (Ed. Code, §§ 12601 and 12602.)

■ Obviously this statute operates prospectively. Teachers may be removed solely for:

(1) Future membership in the Communist Party after the 90 days has passed;

(2) present personal advocacy after September 9, 1953, of the overthrow of the government by force or violence;

(3) present knowing membership in an organization after September 9, 1953, which at the time of his membership he knows advocates overthrow of the government by force or violence.

There can be no discharge for past membership in the Communist Party.

There can be no discharge for past membership in *any* organization.

The discussion by Chief Justice Vinson in *American Communications Assn.* v. *Douds, supra,* 339 U.S. 382 [70 S.Ct. 674, 94 L.Ed. 925], regarding the bill of attainder conclusively establishes that the Dilworth Act does not constitute a bill of attainder. At 339 U.S. 413, 94 L.Ed. 952, the court said:

"The unions' argument as to bill of attainder cites the familiar cases, *United States* v. *Lovett* (1946), 328 U.S. 303, [90 L.Ed. 1252, 66 S.Ct. 1073]; *Ex parte Garland* (1866), 4 Wall. (U.S.) 333 [18 L.Ed. 366]; *Cummings* v. *Missouri* (1866), 4 Wall. (U.S.) 277 [18 L.Ed. 356]. Those cases and this also, according to the argument, involve the proscription of certain occupations to a group classified according to belief and loyalty. But there is a decisive distinction: in the previous decisions the individuals involved were in fact being punished for past actions; whereas in this case they are subject to possible loss of position only because there is substantial ground for the congressional judgment that their beliefs and loyalties will be transformed into future conduct. Of course, the history of the past conduct is the foundation for the judgment as to what the future conduct is likely to be; but that does not alter the conclusion that section 9(h) is intended to prevent future action rather than to punish past action.

"This distinction is emphasized by the fact that members

of those groups identified in section 9(h) are free to serve as union officers if at any time they renounce the allegiances which constituted a bar to signing the affidavit in the past. Past conduct, actual or threatened by their previous adherence to affiliations and beliefs mentioned in section 9(h), is not a bar to resumption of the position. In the cases relied upon by the unions on the other hand, this Court has emphasized that, since the basis of disqualification was past action or loyalty, nothing that those persons proscribed by its terms could ever do would change the result. See *United States* v. *Lovett, supra,* 328 U.S. at p. 314 [90 L.Ed. 1258, 66 S.Ct. 1073]; *Cummings* v. *Missouri, supra,* 4 Wall (U.S.) at p. 287 [18 L.Ed. 356]. Here the intention is to forestall future dangerous acts; there is no one who may not, by a voluntary alteration of the loyalties which impel him to action, become eligible to sign the affidavit. We cannot conclude that this section is a bill of attainder.''

It is clear that the Eisenberg and Steinmetz cases constitute a full and complete answer to the above arguments urged by defendants.

Second: *Were defendants deprived of the right to counsel at the hearing before the board of education?*

*No:* I: The record shows that each defendant had his counsel with him when being interrogated by his employing board; sat at the elbow of his counsel, consulting him privately and frequently. Therefore, since defendants were at all times fully advised by private counsel of their own selection, there was no denial of due process because of lack of counsel.

II: Assuming for the purpose of argument that one or more of the defendants were deprived of an alleged right to have their attorney speak for them when they were being interrogated by their employers, they were not entitled to such a right.

The six employee-teachers were appearing before plaintiff boards as employees for interview by their employers. These were not adversary proceedings or judicial trials between parties, but were merely interviews between employers and employees. If a public employer calls in an employee to ask whether it is true, as he has heard, that the employee was out fishing on days which the employee reported as having been at work, the question arises, could the employee demand the right to counsel before answering such a question? To ask the question is to answer it. The answer is ''No!'' There would be no ground to object in a later civil

service proceeding that he had been deprived of right to counsel in that employer-employee interview.

That this was the true nature of the interrogations by the plaintiff boards is amply evidenced by the Dilworth Act itself, the provisions of which were followed in conducting the interrogations. For instance, Education Code, section 12605, makes it "the duty of any employee of any school district who is ordered to appear before the governing board of the employing school district to appear and specifically to answer under oath a question or questions. . . ."

*People* v. *Zammora*, 66 Cal.App.2d 166 [152 P.2d 180] and *Hallinan* v. *Superior Court*, 74 Cal.App. 420 [240 P. 788], relied on by defendants, are criminal trials, while *Nicholson* v. *Nicholson*, 174 Cal. 391 [163 P. 219], also relied on by defendants, was a divorce action where the trial judge refused to permit one of counsel to argue his case after he had presented his authorities. In this case the Supreme Court held there was no prejudicial error in refusing him this permission. The court, speaking through Mr. Justice Sloss, at page 394, said:

"Finally, it is urged that the court erred in refusing to allow plaintiff's counsel to argue the case. It appears, however, that the court did permit the presentation of the authorities upon which plaintiff relied. Ordinarily, a party to an action has the right to be heard by counsel. But the extent to which argument shall go, especially in civil cases tried without a jury, is largely in the discretion of the court. In the present case, where the issue was a simple one of fact, and only one of the parties was in court, no substantial prejudice was suffered, nor was a 'miscarriage of justice' occasioned, by the refusal of the court to listen to a discussion of the effect of the evidence. (Const., art. VI, § 4½.) It is perfectly apparent from the record that an indulgence of counsel's desire to argue the case would have been fruitless. 'Even if the inferior court erred in refusing to let the attorney speak, yet if the cause has been decided correctly, we will not reverse it, merely to give an opportunity to make a speech.' (*Harrison* v. *Park*, 24 Ky. (1 J.J. Marsh.) 170, 174.)"

A case similar in principle to the cases before us is *People* v. *Cochrane*, 307 Ill. 126 [138 N.E. 291]. In this case a witness refused to answer certain questions asked by the grand jury in connection with its investigation of suspected criminal violations by other persons. He also refused to

answer the same questions in open court where the court refused his request to be permitted to consult with counsel. The Supreme Court held that he had no right to counsel as he was not being prosecuted for a crime and his relation to the investigation was only as a witness, the court saying at page 294:

"One occupying that relation to a criminal prosecution is not entitled to have an attorney at his elbow to advise him whether he shall answer a question or to have proceedings suspended until he can find and consult an attorney. Plaintiff in error never intimated that he would answer the questions· if he was advised by counsel that it was his duty, and it is perfectly apparent that his only object was to obtain advice to aid him in obstructing the administration of justice."

No case has been called to our attention guaranteeing the right to counsel in proceedings such as are here involved, whereas, in fact, in other types of proceedings before a court such right has been denied. In the case of *Ex parte McCarthy*, 29 Cal.· 395, a habeas corpus proceeding where the petitioner had been cited for contempt by the California State Senate, it appeared that he had been summoned to appear as a witness before that body. The court directly held that a witness before the Legislature does not have a right to counsel, and such decision was based upon the ground that he was not accused of any crime but was present merely as a witness. In that connection the court said at page 399:

"Hence the petitioner did not stand before the Senate accused of any offense, but as an accuser of other persons against whom charges of bribery and corruption had been indirectly if not directly made by himself. His real attitude was that of a witness. And we may here remark that that fact alone is a complete answer to all that was said at the argument touching the refusal of the Senate to allow him counsel, and fully explains and justifies the conduct of the Senate in that respect, and relieves it from all just criticism on the score that the course pursued was unusual and arbitrary."

For the foregoing reasons the defendant employees were not denied due process of law by the alleged denial of "effective" right to counsel at their interrogations by their employers. Defendants have wholly failed to show that their "case" was prejudiced by the action of the board. The only claim to prejudicial effect is that counsel might have clarified the meaning of the questions, particularly the meaning of the word "knowing." The record shows several instances when

counsel stopped the proceedings to advise their clients; in fact several instances when the proceedings awaited the availability of counsel for a defendant or a conference between a defendant and his counsel. Had counsel wished to "clarify" their questions to their clients, counsel had full opportunity to do so, and since the attorneys representing defendants are recognized as able counsel, the presumption is that they in fact did do so.

III. The trials and judicial proceedings as to these defendants have occurred in the superior court. Each defendant was represented by counsel of his own selection. It was in such trials that the parties were appearing as adversaries and entitled to counsel, which they had.

An examination of the record discloses that defendants had a full, fair and complete trial before an able and conscientious trial judge.

The judgments are, and each is, affirmed.

Moore, P. J., and Fox, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 21, 1955. Carter, J., was of the opinion that the petition should be granted.