[Civ. No. 6455.   Fourth Dist.   Aug. 10, 1961.]

LEVELON BUILDERS, INC. (a Corporation), Plaintiff;
NICHOLAS J. BESKER, Respondent, v. RAYMOND
L. LYNN et al., Appellants.

Falcone and Falcone, A. V. Falcone and Dewey Lawes Falcone for Appellants.

Walkoe & Dierdorff and Robert T. Dierdorff for Respondent.

SHEPARD, J.—This is an appeal by defendants from a judgment against them in favor of plaintiff in the sum of $2,893.60 plus accrued interest and attorney's fees, on a contract for construction of a home.

## FACTS

On or about December 23, 1957, defendants entered into a contract with plaintiff to have a residence and garage constructed for them for the agreed sum of $6,929. The name appearing therein as contractor was "Levelon Builders." The original complaint herein named "Levelon Builders, Inc." as plaintiff and alleged it to be a corporation. By amendment, plaintiff was changed to Nicholas J. Besker, an individual, doing business as "Levelon Builders," and it was on the complaint as amended that trial was had.

The general substance of the amended complaint alleges that plaintiff holds a valid contractor's license; has complied with the law requiring publication of notice of doing business under fictitious name; that defendants are husband and wife; that the construction contract was entered into between plaintiff and defendants; that it was fully performed by plaintiff; that an arbitration was had under the provisions of the contract, an order was made under said arbitration and plaintiff fully complied therewith; that defendants wrongfully refuse to pay the last two installments of the construction contract, totaling $2,771.60; that as part of the arbitration award defendants were allowed an offset of $125 a month rent, and that such rent should be allowed only for the period from July 1 to August 2, 1958; that defendants failed to pay $412 due for

extras in construction; and that attorney's fees are provided for in the contract.

Defendants denied that plaintiff held a contractor's license; denied, on *lack of information* (italics ours), publication of notice of doing business under fictitious name; denied the execution of the contract with and performance by plaintiff; denied failure to comply with arbitration award; denied plaintiff's right to attorney's fees; denied the allegation regarding extras; admitted failure to pay but denied that it was wrongful; and set up the affirmative defense that plaintiff held no contractor's license.

The court found to be true that plaintiff was duly licensed as a contractor; that the contract was executed by the parties and was fully performed by plaintiff; that the arbitration award was complied with and that extras were unpaid in the amount of $122; that the total owing was $2,893.60.

### CONSTRUCTION COMPLETION AND ARBITRATION AWARD

It is the contention of defendants-appellants that the evidence of completion, extras and of compliance with the arbitration award for rent allowance is insufficient for the court's finding and the judgment. From an examination of the record, it is quite clear that the parties had extensive discussions and understandings as to the evidence outside the record, and that the court itself had some difficulty in persuading the parties during trial to confine themselves to the issues as framed by such stipulation. That the cause was loosely tried from the standpoint of maintaining a clear and perfect record is true. However, the sum total of the record convinces us that the question of completion of the construction by plaintiff and compliance with the arbitration award were not truly in issue. At various points counsel for the parties interrupted each other on this subject and inferentially agreed that it was not in issue. Later the same thing would reoccur. Examples of this as appearing in the record are quoted in Note 1, below.[1]

[1]Note 1. (Trial counsel for defendants was MacNulty; Dierdorff was the trial counsel for plaintiff.)

"MR. DIERDORFF: Excuse me for interrupting, counsel, but Mr. Mc-Cracken, who was one of the arbitrators arrived by reason of subpoena, and I ask that the record reflect, if the Court please, that he be excused inasmuch as we had stipulated that we wouldn't go into that. THE COURT: Hearing no objection the witness so subpoenad may be excused."

"A. Yes, sir, it's been vacant—well, they were supposed to have completed the contract in April, and May they hadn't. We went through arbitration, and they didn't comply with arbitration either, and arbitration gave them till the first of July to complete—— MR. DIERDORFF: I am going to object. MR. MACNULTY: I didn't start that line of question-

It will be noted that plaintiff claims $412 for extras. Defendant husband (the sole witness for defendants) testified to a payment of $140 and the allowance by the arbitration award of $125 a month rent as offset credit. He claimed error in concrete measurement on the extras and that such error had been settled on the spot. This left an uncertainty regarding $157 of the $412 claimed. It is apparent from the written stipulation entered into after the judgment that $122 was agreed upon to settle this in full. Defendants contend that the stipulation was for a mere correction of a clerical error. Under some circumstances it might be so considered. (*Brashear* v. *Gerbracht*, 128 Cal.App.2d 263, 268 [1-6] [274 P.2d 933].) However, it must be remembered that the court, in its memorandum opinion filed December 29, 1959, had recounted a stipulation to ignore the arbitration award. This was long before the stipulation was entered into to amend the judgment. Findings were filed February 5, 1960. Both the memorandum opinion and the findings contain the same provision which the stipulation purported to correct. The stipulation does not, by its wording, state that it is for correction of clerical error. In view of the court's memorandum opinion and the findings which preceded the judgment, it

---

ing. Please listen to my questions. We have entered into certain stipulations that I want to comply with. I have covered my direct examination; I have no further questions.''

''MR. MACNULTY: May I inquire if we have thrown the stipulation out the window entirely. Counsel you are the one that keeps bringing up these matters; I thought we were going to try it on this legal problem. Your Honor for purposes of the record I will object to it on the ground that it is immaterial. THE COURT: The Court is not actually advised as to the extent of your stipulation. It is understood that there wasn't any question as to the performance under the contract in view of your stipulation; now you are going into that very question. MR. DIERDORFF: Well, I would prefer to not go into it.''

In the trial court's memorandum opinion appears the following: ''The parties having by stipulation agreed that the Court should ignore and proceed to decide the above case in the absence of Defendants' Exhibit F, being a copy of certain minutes of the Levelon Builders, Inc., a corporation, and having further agreed that the Court should ignore the provisions of the contract for arbitration and the fact that an arbitration was had and an award rendered, . . .''

After findings and judgment were filed, counsel signed and filed the following stipulation: ''Comes now WALKOE & DIERDORFF by ROBERT E. DIERDORFF and MACNULTY & HULDEN by RICHARD P. MACNULTY, and by Stipulation amend the Findings, Conclusions and Judgment nunc pro tunc as of date of said Judgment was signed by the Court to show the amount of $122.00 added rather than subtracted from $2,771.60 for unpaid extras and increasing the principal amount to $2,893.60, together with interest thereon at the rate of 7% per annum, from August 2, 1958, which sum amounts to $305.52. It is so stipulated. Dated this 11th day of March, 1960.''

might well have been intended to correct a judicial error. ██ A judicial error could be corrected in this fashion by stipulation but not by the court without consent of the parties. (*Estate of Potter,* 141 Cal. 424 [75 P. 850] ; *Bowman* v. *Bowman,* 29 Cal.2d 808, 814 [8a-b] [178 P.2d 751, 170 A.L.R. 264] ; *Brashear* v. *Gerbracht, supra,* [6].) ██ Under the recognized rule that all inferences must be indulged in favor of the final judgment, as expressed in *Brewer* v. *Simpson,* 53 Cal.2d 567, 583 [1-3] [349 P.2d 289], we will so regard it. Thus, the sum total of all these matters clearly supports the position of the trial court. We find no merit in defendant's contention that the evidence is insufficient to support the findings that the construction was completed and that $122 was the balance due for extras.

### RELATIONSHIP OF FICTITIOUS NAME
### TO CONTRACTOR'S LICENSE

Defendants contend that there was no adequate showing that plaintiff complied with the law requiring the publication of doing business under fictitious name, and further contends that plaintiff had no state contractor's license. Under the facts of this case, these problems are inter-related and therefore must be discussed together.

██ Under the pleadings, defendants attempted *on lack of information* to deny that plaintiff had complied with the law relating to publication of notice of doing business under fictitious name. This is an insufficient denial, and defendants must be held to have admitted due publication of notice of doing business under fictitious name. ██ "It is settled that a denial for want of information or belief of an alleged fact which may be ascertained from an inspection of a public record within the reach of defendant is insufficient to raise an issue, and that such a denial constitutes an admission of the allegation of the complaint." (*Meyer* v. *Selggio,* 80 Cal.App. 2d 161, 164 [1] [181 P.2d 690].) See also *Ravel* v. *Hubbard,* 112 Cal.App.2d 255, 260 [9] [246 P.2d 88].

██ Furthermore, as was stated in *Berg Metals Corp.* v. *Wilson,* 170 Cal.App.2d 559, 574 [339 P.2d 869] : "The purpose of the section with respect to a partnership is thus stated in *Andrews* v. *Glick,* 205 Cal. 699, 701 [272 P. 587] : 'The object of [Civ. Code] section 2466, *supra,* is that public notice shall be given and a public record made of the individual members of partnerships with such definiteness and particularity that those dealing with them may at all times know

who are the individuals with whom they are dealing or to whom they are giving credit or becoming bound.' ''

Under the same principles it has been held that the mere addition of the word ''company'' does not cause such a difference in name as to require publication under Civil Code, section 2466. (*Vagim* v. *Brown,* 63 Cal.App.2d 504 [146 P.2d 923] ; *Wetenhall* v. *Chas. S. Mabrey Constr. Co.,* 209 Cal. 293, 295 [286 P. 1015].)

''It is a familiar rule that where a contract does not provide for an illegal mode of performance, but may be lawfully performed, it will be assumed that the parties contracted for a lawful performance.'' (*West Covina Enterprises, Inc.* v. *Chalmers,* 49 Cal.2d 754, 759 [5] [322 P.2d 13].)

In the case here at bar, in addition to the admission contained in the pleadings above noted, there was evidence that plaintiff had properly published notice of doing business under fictitious name as ''Levelon Builders, Inc.,'' and that a contractor's license had been duly issued to him under the name of ''Levelon Builders.'' Levelon Builders, Inc., as a corporation, filed its articles of incorporation on November 12, 1957, but there was testimony that it did not engage in construction contracting until it received its contractor's license February 19, 1958. While there was conflicting evidence, the trial court was under no compulsion to adopt conflicting evidence as true. Defendant husband testified that he thought he was doing business with the corporation. However, he testified, further, that he had thoroughly investigated the operations. He stated he thought Lester J. Julian was connected with the corporation and that he entered into the contract because of special confidence in Julian. There was other evidence, however, to the effect that none of the persons representing plaintiff had ever informed defendant husband that the contract was with the corporation. Actually, Julian was acting as general office manager for plaintiff and did ultimately become a principal stockholder and officer in the corporation.

There is no evidence that the name ''Levelon Builders'' or ''Levelon Builders, Inc.,'' was ever used by any other person, firm or corporation in any way. There is no evidence of any fraudulent intent, nor is there any evidence that defendants were in any way damaged by their misapprehension, if they had any. ''Substantial compliance with the statute is all that is required [citation], and the trial judge was correct

in so holding." (*Berg Metals Corp.* v. *Wilson, supra,* p. 575 [19b].) See also *Bank & Trust Co.* v. *Gearhart,* 45 Cal.App. 421, 423 [2] [187 P. 989]. Actually, the net result from a legal standpoint was beneficial to defendants because they, through the assumption by the corporation of the duties required under the construction contract, acquired not only the financial responsibility of plaintiff as an individual but also the financial responsibility of the corporation. The evidence shows that plaintiff carried on the construction up until February 19, 1958, and thereafter the corporation, into which plaintiff merged his business, completed the construction. There was no fraud on the state, nor was there any violation of the state's policy regarding contractor's license.

A similar situation is dealt with by our Supreme Court in *Weiman* v. *Superior Court,* 51 Cal.2d 710, wherein that court stated at pages 713-714 [5] [336 P.2d 489]:

"With respect to the first issue of law, the admitted facts showed that John A. Nelson, individually, was at all times a licensed contractor; that he made the construction contract with the Weimans in his individual capacity; that thereafter he incorporated as John A. Nelson, Incorporated, and assigned the contract to the corporation; that the corporation was thereafter duly licensed during the course of the construction and has since remained duly licensed at all times, but that there was an interval between the time when the assignment was made by John A. Nelson, individually, to John A. Nelson, Incorporated, and the time when the corporation became duly licensed. The parties submitted briefs on this matter between the time of the hearing on May 28 and the hearing on June 13. We are of the opinion that the trial court properly ruled against the Weimans on this issue of law, as the admitted facts showed that there had been a substantial compliance with the licensing requirements."

Where the plaintiff has substantially complied with the requirements of the state law and has proceeded in good faith to render the service required by the contract, we think the minor technical error in his procedure which did no damage to anyone, should not be used as a sword to strike down his legitimate claim. (*Higgins* v. *Standard Fed. Sav. & Loan Assn.,* 188 Cal.App.2d 68, 74 [8] [10 Cal.Rptr. 200]; *Gatti* v. *Highland Park Builders, Inc.,* 27 Cal.2d 687, 690 [1] [166 P.2d 265].) We are unable to find merit in defendants' contention.

## Partnership

Defendants contend that Levelon Builders was a partnership between plaintiff and one Lester J. Julian. It is true that on direct examination plaintiff so testified, but later plaintiff realized that he did not know the meaning of the word "partnership" and he retracted that testimony. Julian himself testified that he was a mere employee acting as office manager and in training to take over mangership of the corporation when it became licensed as a contractor. There was no testimony that Julian would have been liable in any way for debts or losses, nor that any capital invested by Julian would have been used or depleted by a loss. The evidence is sufficient to support the finding of the trial court that Levelon Builders was not a partnership. (*Coward* v. *Clanton,* 122 Cal. 451, 454 [55 P. 147]; *Mulligan* v. *Wilson,* 94 Cal.App.2d 286, 291 [2] [210 P.2d 526]; *Hayward's* v. *Nelson,* 143 Cal.App.2d 807, 814 [1] [299 P.2d 1013]; *Precision Fabricators, Inc.* v. *Levant,* 182 Cal.App.2d 637, 641 [1-3] [6 Cal.Rptr. 395].) We find no merit in defendants' contention.

Defendants have cited a plethora of cases in support of their contentions, such as *Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141 [308 P.2d 713]; *Precision Fabricators, Inc.* v. *Levant, supra; Owens* v. *Haslett,* 98 Cal.App.2d 829 [221 P.2d 252]; *Loving & Evans* v. *Blick,* 33 Cal.2d 603 [204 P.2d 23]; *Franklin* v. *Nat C. Goldstone Agency,* 33 Cal.2d 628 [204 P.2d 37]; *Steinwinter* v. *Maxwell,* 183 Cal.App.2d 34 [6 Cal. Rptr. 496]. The *Loving & Evans* case, the *Franklin* case, the *Steinwinter* case, and the *Lewis & Queen* case involve partnerships admittedly operating without a contractor's license. It was stated in the latter case, at page 149, that "Undoubtedly there are situations in which substantial compliance with the licensing requirements satisfies the policy of the statute." Recognition is therein again given to the decision in the *Citizens State Bank of Long Beach* v. *Gentry,* 20 Cal.App.2d 415 [67 P.2d 364], which enunciated principles similar to those set forth in *Weiman* v. *Superior Court, supra.* In the *Owens* case, the contractor had no license when he made the contract nor when he commenced construction. The *Precision Fabricators, Inc.* case involved refusal of the trial court to permit proof of joint venture. Other cases cited by defendants likewise are clearly distinguishable.

All of these points made by defendants are primarily based on their interpretation of the evidence as distinguished from

the interpretation placed thereon by the trial court. As was pointed out in *Precision Fabricators, Inc.* v. *Levant, supra,* and in many other cases, each case must rest primarily on the peculiar circumstances of its own facts. ██ On appeal we are controlled by the rule set forth in *Brewer* v. *Simpson, supra,* that we must indulge in every legitimate inference in support of the judgment. On the facts found by the trial court, the decision is reasonable and proper.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied September 7, 1961, and appellants' petition for a hearing by the Supreme Court was denied October 4, 1961. Schauer, J., was of the opinion that the petition should be granted.