[Civ. No. 29087. Second Dist., Div. Five. Feb. 1, 1967.]

J & J BUILDERS SUPPLY, Plaintiff and Respondent, v. RON CAFFIN et al., Defendants and Appellants.

Lever, Anker & Israel and William G. Israel for Defendants and Appellants.

David G. Jackson for Plaintiff and Respondent.

HUFSTEDLER, J.—Plaintiff, J & J Builders Supply, sued defendants, Caffin and Jeffrey, individually and as copartners doing business as Perry Masonry, to recover a debt alleged to have arisen from plaintiff's delivery to the defendants of building materials at their request. After a judgment in favor of plaintiff against the defendants, individually and as copartners, for $5,851.91, defendants appeal, contending that the evidence was insufficient to support the judgment.

In September of 1963 Jeffrey and Caffin met with the president and secretary-treasurer of the plaintiff corporation Jeffrey, a masonry contractor, had been a customer of plain-

tiff for a year or so before the meeting and had always paid his bills promptly. Jeffrey brought Caffin into the plaintiff's office and introduced him to the plaintiff's officers, stating in Caffin's presence: ''This is my new partner . . . [W]e are going to go into a new business, and I want to discontinue Larry Jeffrey's account and start with Perry Masonry. . . . [We are] going to go out after tract work and operate on a larger scale . . . We are going to do a lot of work, and [Caffin] has got a lot of money, is going to throw a lot of money into the business.'' Caffin said nothing. Plaintiff opened an account under the name ''Perry Masonry'' and began delivering masonry materials to homesites shortly after that conversation. Invoices addressed to Perry Masonry were paid by checks bearing the printed name ''Perry Masonry'' and, in very small type, the additional words ''a division of the Adnuel Fireplace Corp.'' Plaintiff's officers never observed the small type. When plaintiff stopped receiving payment for the materials shipped, it cut off credit. Plaintiff's secretary-treasurer, Duncan, went to see the defendants at their office to collect the unpaid balance of the account and at that time had a conversation with both of them. Caffin told him that he was not liable, adding, ''It's a corporation, so I am not personally responsible.'' Duncan said, "Well, you told me you were partners.'' To which Caffin replied, ''I, well, I always call anybody that I go in business with my partner no matter what the deal is.''

Before the first conversation with defendants, plaintiff knew that Caffin and Jeffrey had participated in forming a corporation called ''Adnuel Fireplace Corp.'' (hereinafter Adnuel) to manufacture fireplace throats some time in 1963, but plaintiff believed that Adnuel and Perry Masonry were entirely separate companies. Plaintiff had done some business with Adnuel, but plaintiff never delivered materials to be used in manufacturing fireplace throats to Adnuel nor to Perry Masonry. All of the materials which are the subject of the debt were materials sent to tracts for use in residential construction. Defendants never told the plaintiff that any of the masonry materials were being purchased for or by Adnuel. Defendants made no claim that Adnuel was the principal until after plaintiff cut off credit and pressed the defendants for payment of the debt. The sole basis upon which the defendants contend that plaintiff had any prior notice of their claim that Adnuel was the principal is their filing upon Adnuel's behalf a certificate of doing business under fictitious firm

name, showing Adnuel doing business as Perry Masonry. Plaintiff had no actual notice of the filing of the certificate.

Defendants contend upon appeal that the debt was incurred by Adnuel, a corporation, for which they are not individually liable, and that the evidence was insufficient to sustain liability on the theory that defendants were copartners responsible for the debt.

### Liability of Jeffrey

█ The evidence, viewed most favorably to the respondent as it must on appeal (*Crawford* v. *Southern Pac. Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]), was ample to support the judgment against Jeffrey. If, as Jeffrey contends, the principal was Adnuel, and Jeffrey was merely an agent for the corporation, he is nevertheless personally liable because he was acting as an agent of an undisclosed principal at the time plaintiff extended credit.

█ " 'The rule is well established that where one deals with another believing him to be a principal, and subsequently learns that he was dealing with an agent of an undisclosed principal, he may recover either from the person with whom he dealt or from the undisclosed principal. . . . If a person would excuse himself from responsibility on the ground of agency, he must show that he disclosed his principal at the time of making the contract, and that he acted on his behalf, so as to enable the party with whom he deals to have recourse to the principal in case the agent had authority to bind him . . .' " *Clark* v. *Baen* (1925) 75 Cal.App. 389, 394 [242 P. 872]. (*Bradford* v. *Woodworth* (1895) 108 Cal. 684 [41 P. 797]; cf. *Standard Oil of Cal.* v. *Doneux* (1961) 192 Cal.App.2d 608, 611-612 [13 Cal.Rptr. 749].)

Adnuel's filing a certificate stating that it was doing business under the fictitious name of Perry Masonry is immaterial. Adnuel's action is not a performance of Jeffrey's duty to disclose the name of his principal. Constructive notice of the contents of Adnuel's certificate is not a substitute for actual notice of Jeffrey's and Adnuel's capacities in the transaction. Section 2466 of the Civil Code is designed to make available to the public, and especially to creditors, the identities of persons who are doing business under fictitious names for the purpose of benefiting creditors; the purpose is not to estop creditors who do not rely on the public record nor to provide a shield to persons who do business under fictitious names against their creditors who do not avail themselves of

the information contained in the records prescribed by section 2466 of the Civil Code.[1]

Jeffrey's liability is also supported by the evidence that he obtained credit from the plaintiff by holding out himself and Caffin as copartners doing business under the fictitious name Perry Masonry. He can not be heard to say that Perry Masonry was not the fictitious name under which he was doing business, but the fictitious name in which a third person, Adnuel, was doing business. He is in no better position to urge that plaintiff should not have taken seriously his representation of copartnership. A partnership, of course, is not a legal entity apart from exceptional circumstances, none of which here appear. (*Reed* v. *Industrial Accident Com.* (1937) 10 Cal.2d 191, 192-193 [73 P.2d 1212, 114 A.L.R. 720] ; *Sonberg* v. *Bergere* (1963) 220 Cal.App.2d 681, 682 [34 Cal. Rptr. 59] ; *Rudnick* v. *Delfino* (1956) 140 Cal.App.2d 260, 266 [294 P.2d 983].) When Jeffrey represented himself as a partner, he necessarily pledged his own unlimited liability to respond to the plaintiff for any debts incurred either by him or by Caffin within the scope of their partnership. The representation of partnership, even if disbelieved, in no way diminishes or enlarges the personal liability which he assumed in obtaining credit for himself.

### Liability of Caffin

The liability of Caffin rests on evidence which is slightly different from that offered against Jeffrey. At the time of the initial conversation with the plaintiff's officers, Caffin let Jeffrey do all the talking. He sat silently by while Jeffrey told

[1]None of the cases cited by appellants support the proposition that creditors have a duty to check the public records to ascertain the identity of those who are doing business under fictitious names, or that creditors who do not check the public records are nevertheless bound by whatever information such an examination would reveal. *Andrews* v. *Glick* (1928) 205 Cal. 699 [272 P. 587], *Bank of America* v. *National Funding Corp.* (1941) 45 Cal.App.2d 320 [114 P.2d 49], *Hixson* v. *Boren* (1956) 144 Cal. App.2d 547 [301 P.2d 615], each involve the right of one doing business under a fictitious firm name who has not complied with section 2466 of the Civil Code to bring an action by way of a complaint or cross-complaint. *Levelon Builders, Inc.* v. *Lynn* (1961) 194 Cal.App.2d 657 [15 Cal.Rptr. 582], held that one who had substantially complied with section 2466 could maintain an examination, particularly where the defense of noncompliance with the statute was improperly raised. None of these cases have anything to do with the rights or duties of creditors. *J. C. Wattenbarger & Sons* v. *Sanders* (1963) 216 Cal.App.2d 495 [30 Cal.Rptr. 910], held that a limited-partner defendant was not an ostensible general partner merely because the fictitious name certificate listed his name without a designation that he was a limited partner. To the extent that *J. C. Wattenbarger & Sons* may be in point, it implies that the creditor could not rely entirely on the certificate which was filed.

plaintiff's officers that Caffin was a partner and that Caffin was going to invest a lot of money in Perry Masonry. That he was fully aware of Jeffrey's representations is apparent from his later conversation with Duncan, in which he admitted that he told Duncan that he and Jeffrey were partners, and explained that he always called anybody that he went into business with his partner ''no matter what the deal is''.

■ When it is contended that a defendant is an ostensible partner, the question is whether his acts and conduct were sufficient to lead the creditor to believe that he was a copartner and that he assumed responsibility as such. This is an issue of fact for the trial court to determine from all of the evidence presented. (*J. C. Wattenbarger & Sons* v. *Sanders, supra,* 216 Cal.App.2d at pp. 500-501.) ■ Unauthorized declarations of Jeffrey made outside the presence of Caffin would not be admissible to establish ostensible partnership of Caffin. (See *Vanderhurst, Sanborn, & Co.* v. *De Witt* (1892) 95 Cal. 57, 62-63 [30 P. 94, 20 L.R.A. 595]; *Milstein* v. *Sartain* (1943) 56 Cal.App.2d 924, 932 [133 P.2d 836].) ■ However, declarations of partnership by Jeffrey in Caffin's presence under circumstances in which Caffin must have known that a response negativing Jeffrey's representation should be made, to avoid misleading plaintiff, are properly received as adoptive admissions of Caffin.

The case most closely in point in California is *Singh* v. *Kashian* (1954) 124 Cal.App.2d Supp. 879 [268 P.2d 768]. In that case Joseph, a bail broker, arranged for the execution of a property bond for $1,000 by Kashian and Shuklian to free Lahab Singh from custody. One B. Ishar Singh deposited $1,000 cash with the broker. An arrangement was made for a substitution of Samond Singh's cash for B. Ishar Singh's deposit. Joseph, Ishar, Samond, Kashian, and Shuklian met at Joseph's office. Joseph stated in the presence of Kashian and Shuklian and the plaintiff Singh that he, Kashian, and Shuklian were partners. The ''partners'' made no denial. In the presence of Kashian and Shuklian, Joseph delivered a receipt for $1,000 to Samond, signed ''Mike Kashian and A. Shuklian, by Aram Joseph.'' The court concluded that upon these facts a reasonable inference arose that the plaintiff relied upon the representations of partnership in paying over his money to the defendants. The court held that the evidence was sufficient to sustain the judgment against Kashian and Shuklian on the alternative theories of partnership (Corp.

298

Code, § 15009, subd. 1) or evidence of an estoppel to deny a partnership (Corp. Code, § 15016).

■ Caffin's failure to deny Jeffrey's statements of partnership, coupled with his later admission that he had held himself out to the plaintiff as a partner, and the extension of credit to the defendants in the fictitious name which each led the plaintiff to believe was the firm name of the copartnership, were sufficient to sustain the liability of Caffin as an ostensible partner of Jeffrey's.

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.