Filed 4/3/13  Cravea v. Nejadpour CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| GERALD CRAVEA,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>F. BARI NEJADPOUR et al.,<br><br>　　Defendants and Respondents. | B237993<br><br>(Los Angeles County<br>Super. Ct. No. BC383052) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Alan S. Rosenfield, Judge.  Affirmed.

　　　　Law Offices of Thomas P. Carter and Thomas P. Carter for Plaintiff and Appellant.

　　　　L.A. Law Group and Matthew S. Grayson for Defendants and Respondents.

_____

## INTRODUCTION

The trial court granted the motion for summary judgment of defendants and respondents F. Bari Nejadpour and Nejadpour & Associates (Nejadpour defendants) and then entered judgment in their favor and against plaintiff and appellant Gerald Cravea. We affirm.

This action arises from the alleged legal malpractice and fraud of Benjamin Donel and the Law Offices of Benjamin Donel (Donel defendants), who represented plaintiff in a number of matters. Plaintiff contends that the Nejadpour defendants were "partners" of the Donel defendants and, as such, were vicariously liable for the Donel defendants' alleged negligent and fraudulent conduct. The main issue on appeal is whether there was a triable issue of material fact concerning the alleged actual or ostensible partnership between Donel and Nejadpour, or their two respective law firms. We shall conclude that the trial court correctly found that, as a matter of law, there was no partnership.

## FACTUTAL AND PROCEDURAL BACKGROUND

1.      *Donel's Representation of Plaintiff*

From approximately January 2005 to February 2007, the Donel defendants provided legal services to plaintiff. They represented plaintiff in a variety matters, including the foreclosure sale of several of plaintiff's properties, plaintiff's bankruptcy petition, a probate matter, and a criminal case.

Between January 2005 and December 2006, plaintiff executed four different retainer agreements. Each agreement was on stationary for the Law Offices of Benjamin Donel & Associates, and stated that the contract was between plaintiff and Benjamin Donel. The Nejadpour defendants were not mentioned in the retainer agreements.

Three of the four retainer agreements included the following provision: "ASSOCIATION OF COUNEL:  Attorney [Donel] may associate other counsel at his discretion and at any stage of the legal proceedings, providing that there is no additional charge to Client [plaintiff] for such services. This association is for trial counsel to control litigation of the case because of the area of specialty."

Defendant F. Bari Nejadpour never provided any legal services to plaintiff and was never paid by plaintiff any amount of money. Indeed, the first time plaintiff met Nejadpour was at a deposition in this case, long after Donel stopped providing plaintiff with legal services.

2. *The Relationship Between Donel and Nejadpour*

At some point after he passed the state bar in 2003 and before he began representing plaintiff, Donel developed a professional relationship with his friend Nejadpour. According to Donel, he and Nejadour "occasionally" made special appearances on each other's behalf. Nejadpour estimates that Donel made three or four appearances for him, and that he made one or two appearances for Donel. Nejadpour and Donel did not pay each other for making special appearances and did not give money to each other for any purpose. Rather, the two men informally agreed to make appearances for each other on a quid pro quo basis.

Donel and Nejadpour also sometimes informally consulted with each other over the telephone regarding legal issues. They deny, however, consulting with each other on the matters Donel handled for plaintiff. Moreover, Donel and Nejadpour did not share bank or trust accounts or expenses and profits. They also maintained separate offices, Donel's in Beverly Hills and Nejadpour's on Wilshire Boulevard in Los Angeles.

3. *Representations Donel and Nejadpour Made to Third Parties Regarding Their Relationship*

During the time period the Donel defendants represented plaintiff, they sent letters to plaintiff and others which listed in the top right corner "Law Offices of Lawrence Levy"[1] and "Nejadpour & Associates" as "ASSOCIATED COUNSELS." In at least one letter from the Donel defendants to plaintiff, their letterhead stated that "Law Offices of Lawrence Levy" and "Nejadpour & Associates" were "OFFSIDE COUNSELS." The

---

[1] Donel was an intern for Levy before he became a lawyer. Donel claims that he informed Levy that he placed his name on his stationary. Levy, however, in a declaration filed in this action, stated that he never gave Donel permission to use his name for any purpose and that he never had an "association" with Donel's firm of any kind.

letterhead on some correspondence the Donel defendants sent to plaintiff, however, did not include a reference to Nejadpour & Associates or the Law Offices of Lawrence Levy.

The Nejadpour defendants placed Benjamin Donel's name on their letterhead below the name of F. Bari Nejadpour, "Managing Partner." They also listed Donel under "People" on their website. Further, the Nejadpour defendants' letterhead stated that their "Beverly Hills Office" was located at 280 S. Beverly Drive, No. 209, which was the Donel defendants' office.[2] There is no evidence, however, that plaintiff received any correspondence from the Nejadpour defendants, and plaintiff concedes that he never searched on the internet for the Nejadpour defendants' website.

Donel and Nejadpour both concede that they had an informal agreement to use each other's name on their respective stationary. In their depositions taken in this action, Donel and Nejadpour provided similar explanations for entering into this agreement. Donel testified that he placed Nejadpour & Associates on his stationary so that it would look "more professional." Nejadpour stated he thought his law firm would look "more impressive" by listing other professionals, including plaintiff, on its stationary.

At his deposition, plaintiff stated that Donel told him that he had a "full-service" law firm, and that he had attorneys working for him who would be able to assist plaintiff in different areas of law. When plaintiff received letters from the Donel defendants that listed law firms on the top right corner, he assumed that those law firms and the Donel defendants "worked together."

4.      *Procedural History of This Case*

Plaintiff commenced this action against the Donel defendants and other defendants on December 31, 2007, by filing a complaint in the superior court. In his operative third amended complaint (TAC), plaintiff set forth 10 causes of action against the Donel defendants and Nejadpour defendants—five for professional negligence and five for

---

[2]      The Nejadpour defendants' letterhead also stated an address for the firm's "Switzerland Office." Nejadpour claims that he occasionally worked on his California cases in that office.

4

fraud and misrepresentation.[3] The TAC did not allege that the Nejadpour defendants directly provided legal services to plaintiff, or that they made any false and fraudulent statements to him. Instead, the TAC alleged that the Nejadpour defendants are liable for Donel's alleged tortious conduct because Donel was their employee or partner.

On January 6, 2011, the Nejadpour defendants filed a motion for summary judgment. In support of their motion, the Nejadpour defendants filed, inter alia, a declaration by Benjamin Donel. Donel stated in his declaration that he was not and never had been Nejadpour's partner.

On June 13, 2011, the trial court issued an order granting the motion. Based on that order, the trial court entered judgment in favor of the Nejadpour defendants and against plaintiff on October 17, 2011. Plaintiff filed a timely notice of appeal of the judgment.

## CONTENTIONS

Plaintiff makes three main arguments on appeal. He first contends that the trial court should have denied the Nejadpour defendants' motion for summary judgment because there was a triable issue of material fact regarding whether an actual partnership existed between the moving defendants and the Donel defendants. Next, plaintiff argues the motion should have been denied because there was a triable issue of material fact regarding whether a partnership by estoppel existed. Finally, plaintiff contends there are triable issues of material fact as to whether Nejadpour violated Business and Professions Code section 17200 et seq. and section 17500 et seq. by falsely representing that he was part of Donel's firm and that Donel was part of his firm.

## DISCUSSION

1. *Standard of Review*

We review the trial court's grant of summary judgment independently. (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1067.) A motion for

---

[3] The TAC also set forth three causes of action against defendants Gilda Daneshgar, Shiva Donel, Easy Realty and Loans, and Easy Financial LLC, none of whom are parties to this appeal.

5

summary judgment must be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

In conducting our de novo review, we employ the same three-step analysis as the trial court. (*Benson v. Superior Court* (2010) 185 Cal.App.4th 1179, 1185.) "The three steps are (1) identifying the issues framed by the complaint, (2) determining whether the moving party has made an adequate showing that negates the opponent's claim, and (3) determining whether the opposing party has raised a triable issue of fact." (*Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1124.)

2. *Plaintiff's Causes of Action in the TAC Against the Nejadpour Defendants Depend On a Partnership Relationship Between the Nejadpour Defendants and the Donel Defendants*

The TAC alleged that the Donel defendants negligently handled legal matters for plaintiff and defrauded plaintiff in numerous ways. It did not, however, contain any specific factual allegations regarding the Nejadpour defendants' alleged wrongdoing. The TAC merely alleged that Benjamin Donel "was an employee or partner of Defendant Nejadpour & Associates." The causes of action in the TAC against the Nejadpour defendants thus rest on their alleged vicarious liability for Donel's alleged negligence and fraud.

In his opposition to the motion for summary judgment and in his respondent's brief, plaintiff did not contend that Donel was an "employee" of the Nejadpour defendants. Therefore the main issue on appeal, as framed by the TAC, is whether the Nejadpour defendants were actual or ostensible partners of Donel or his law firm.

3. *The Nejadpour Defendants Met Their Burden of Negating Plaintiff's Claim That They Had an Actual or Ostensible Partnership with the Donel Defendants*

a. *Actual Partnership*

A partnership is an "association of two or more persons to carry on as coowners of a business for profit." (Corp. Code, § 16202, subd. (a).) "Generally, a partnership

6

connotes co-ownership in partnership property, with a sharing in the profits and losses of a continuing business." (*Chambers v. Kay* (2002) 29 Cal.4th 142, 151 (*Chambers*).) The partnership itself and each of its partners are jointly and severally liable for the tortious acts committed in the ordinary course of business by the partnership or any of its partners. (Corp. Code, §§ 16305, 16306.)

In support of their motion for summary judgment, the Nejadpour defendants filed a declaration by Benjamin Donel, wherein Donel categorically denied that he had ever been a partner with F. Bari Nejadpour. They also presented evidence describing the nature of the relationship. This evidence indicated that while Donel and Nejadpour occasionally made special appearances for each other on a quit pro quo basis, and sometimes consulted with each other on legal matters, they did not operate a business together on a continuing basis, or enter into a joint venture to represent plaintiff or any other client.[4] Crucially absent from their business relationship was any agreement to share profits, losses, revenues or expenses, or any practice of doing so. (*Sandberg v. Jacobson* (1967) 253 Cal.App.2d 663, 668 ["It is essential . . . to the existence of a partnership that there be a community of interest and an agreement to share jointly in the profits and losses resulting from the enterprise"].) The Nejadpour defendants thus met their burden of showing that plaintiff could not establish the existence of an actual partnership between them and the Donel defendants.

b.      *Ostensible Partnership*

Plaintiff contends that if Nejadpour and Donel were not actual partners, they were at a minimum ostensible partners. A partnership by estoppel is formed when the acts of an ostensible or purported partner are " 'factually and legally sufficient to lead another person to believe he was a copartner and assumed responsibility for such.' " (*Armato v.*

---

[4]      Plaintiff argues in the respondent's brief that Nejadpour and Donel entered into "a partnership agreement or joint venture." A partnership and joint venture are the same in all essential respects (*Chambers*, *supra*, 29 Cal.4th at p. 151), except that "[a] joint venture usually involves a single business transaction, whereas a partnership may involve 'a continuing business for an indefinite or fixed period of time.' " (*Weiner v. Fleischman* (1991) 54 Cal.3d 476, 482.)

7

*Baden* (1999) 71 Cal.App.4th 885, 898; accord *J & J Builders Supply v. Caffin* (1967) 248 Cal.App.2d 292, 297 (*J & J Builders*).)

Corporations Code section 16308, subdivision (a) provides: "If a person, by words or conduct, purports to be a partner, or consents to being represented by another as a partner, in a partnership or with one or more persons not partners, the purported partner is liable to a person to whom the representation is made, if that person, relying on the representation, enters into a transaction with the actual or purported partnership."

The Nejadpour defendants presented evidence negating plaintiff's ostensible partnership allegations. This evidence showed that plaintiff had not met Nejadpour before filing his suit, and had not seen his website or any correspondence from Nejadpour before agreeing to hire the Donel defendants. Plaintiff thus could not have relied on any representation made by Nejadpour in entering into a transaction with the purported Donel-Nejadpour partnership.

Plaintiff's ostensible partnership claim therefore rests solely upon Donel's alleged representations to plaintiff made with Nejadpour's consent. These representations were found in Donel's letterhead, which referred to Nejadpour & Associates as one of two "Associated Counsels" or "Offside Counsels." Significantly, Donel's letterhead never referred to Nejadpour or his firm as a "partner." It is also worth noting that "Nejadpour & Associates," and not F. Bari Nejadpour, was listed as an associated counsel. Generally individuals and not law firms are "partners" with each other. Moreover, Donel's letterhead must be placed in the context of the four retainer agreements plaintiff signed and the bills Donel sent plaintiff for services rendered. None of the retainer agreements or bills mentioned or referred to Nejadpour or his firm in any way. We hold that under these circumstances, the representations on Donel's letterhead concerning Nejadpour & Associates were not, as a matter of law, sufficient to establish an ostensible partnership.

4. *Plaintiff Did Not Meet His Burden of Showing There is a Triable Issue of Material Fact*

Plaintiff did not meet his burden of showing there is a triable issue of material fact with respect to an alleged actual or ostensible partnership between the Nejadpour defendants and the Donel defendants. He presented no evidence whatsoever regarding a continuous business or joint venture involving the sharing of profits and losses. Plaintiff therefore did not show there is a triable issue regarding an actual partnership.

With respect to an ostensible partnership, plaintiff filed excerpts from his deposition regarding representations made by Donel. Specifically, plaintiff contends that Donel stated to plaintiff that he had different attorneys working for him who specialized in different areas of the law, and that he had a full-service law firm. There is no evidence, however, that Nejadpour approved of or even knew about these representations. The Nejadpour defendants cannot be liable under an ostensible partnership theory based on Donel's unauthorized statements. (See *J & J Builders*, *supra*, 248 Cal.App.2d at p. 297 ["Unauthorized declarations of Jeffrey made outside the presence of Caffin would not be admissible to establish ostensible partnership of Caffin"].)

Plaintiff's reliance on *J & J Builders* is misplaced. There, the plaintiff sued defendants Jeffrey and Caffin, individually and as copartners doing business as "Perry Masonry," to recover payment for building materials it delivered to the defendants. Prior to the delivery, the plaintiff's representative had a meeting with Jeffrey and Caffin. At the meeting, in Caffin's presence, Jeffrey stated: " 'This is my new partner . . . [W]e are going to go into a new business, and I want to discontinue [my previous business] account and start with Perry Masonry. . . .'" (*J & J Builders*, *supra*, 248 Cal.App.2d at p. 294.) While Jeffrey said this, Caffin sat silent. (*Ibid.*) Subsequently, plaintiff sent invoices to "Perry Masonry," and was paid by checks bearing that name. (*Ibid.*) The Court of Appeal held that under these circumstances, Caffin could be liable to the plaintiff as an ostensible partner. (*Id.* at p. 297.)

The present case is distinguishable from *J & J Builders*.  Neither Donel nor Nejadpour ever represented to plaintiff orally or in writing that they were "partners" with each other.  Further, Donel's oral statements about having a full-service law firm were not made in Nejadpour's presence or with his consent.  Indeed, plaintiff did not meet Nejadpour until long after Donel stopped representing plaintiff.  Further, unlike the invoices in *J & J Builders*, Donel's bills in no way indicated that Donel rendered services in his capacity as a partner of Nejadpour or anyone else.  *J & J Builders* therefore lends no support to plaintiff's ostensible partnership claim.

5.      *Plaintiff Cannot Survive Summary Judgment Based on a New Unfair Business Practices Claim*

Plaintiff argues that Nejadpour  violated Business and Professions Code section 17200 et seq. and section 17500 et seq. by falsely representing that he was part of Donel's firm and that Donel was part of his firm.  We shall not reach the merits of plaintiff's unfair business practices claim because the claim was not alleged in the TAC and plaintiff did not argue he could assert this claim in the trial court.

The issues on a motion for summary judgment are framed by the pleadings. (*Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 7.)  "If a plaintiff wishes to expand the issues presented, it is incumbent on the plaintiff to seek leave to amend the complaint either prior to the hearing on the motion for summary judgment, or at the hearing itself."  (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258.)  To allow a plaintiff to expand the issues without filing an amended pleading, "allows nothing more than a moving target."[5]  (*Id.* at p. 1258, fn. 7.)

---

[5]      Some courts have limited the ability of a plaintiff to amend his or her complaint in response to a motion for summary judgment.  For example, in *Van v. Target Corp.* (2007) 155 Cal.App.4th 1375, 1387, fn. 2, the court stated that "amendments are usually allowed after summary judgments have been filed only to repair complaints that are legally insufficient—in other words, those that would be subject to a motion for judgment on the pleadings."  The court further stated that a plaintiff cannot amend his or her complaint to state a different theory of recovery.  (*Id.* at p. 1388, fn. 2.)

Further, if an appellant does not raise an argument in the trial court, he forfeits the argument on appeal. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 226.) The forfeiture rule "is designed to advance efficiency and deter gamesmanship." (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264 (*Keener*); accord *Hartley v. Superior Court* (2011) 196 Cal.App.4th 1249, 1260 ["The main purpose of the forfeiture rule is to protect the trial court and the opposing party from unfairness"].) It encourages the parties to bring errors to the attention of the trial court, so that they may be corrected before a judgment is entered and an appeal is taken. (*Keener,* at p. 264; *In re Wilford J.* (2005) 131 Cal.App.4th 742, 754.)

Here, plaintiff did not set forth an unfair business practices cause of action in the TAC. He also did not seek leave in the trial court to amend the TAC to add such a cause of action. Whether the Nejadpour defendants violated certain provisions of the Business and Professions Code was simply not an issue raised by the motion for summary judgment or adjudicated by the trial court.

Moreover, plaintiff did not argue in opposition to the Nejadpour defendants' motion for summary judgment that he could assert an unfair business practices claim. Plaintiff therefore forfeited any argument on appeal that the trial court "erred" by failing to deny the motion on the ground that he can maintain an unfair business practices claim against the Nejadpour defendants.

Plaintiff argues that we should consider his "new legal theory" because it is based on facts that were before the trial court and is purely a question of law. It is true that we have discretion to consider pure questions of law for the first time on appeal. (*Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697, 1709.) We are more inclined to exercise such discretion when there has been a change in decisional law that affects the rights of the parties. (*GreenLake Capital, LLC v. Bingo Investments, LLC* (2010) 185 Cal.App.4th 731, 739, fn. 6.)

In this case, however, we decline to consider plaintiff's new unfair business practices claim. Plaintiff offers no reason why he failed to raise this argument below. He does not, for example, claim that his new legal theory is based on a change in decisional law. Moreover, because plaintiff never amended his TAC to add an unfair business practices claim, the Nejadpour defendants had no opportunity to present evidence showing that plaintiff could not prevail on such a claim. The Nejadpour defendants submitted papers showing that there was no triable issue of material fact and that they were entitled to judgment as a matter of law on all of the causes of action stated in the TAC. It is fundamentally unfair to the Nejadpour defendants to change the goal posts at this stage of the litigation.

## DISPOSITION

The judgment is affirmed. Respondents F. Bari Nejadpour and Nejadpour & Associates are awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

CROSKEY, J.

12